## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (BALTIMORE DIVISION)

| | |
|---|---|
| Sandra T. Quickley, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| University of Maryland Medical System | : |
| Corporation and Maryland General Hospital, | : |
| Inc., | : |
| | : |
| Defendants. | : |
| | : |

Civil Action No. 12-cv-321-CCB

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## <u>MOTION TO DISMISS THE COMPLAINT</u>

Timothy F. McCormack
(Fed. Bar No. 03565)
Michelle M. McGeogh
(Fed. Bar No. 028778)
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Baltimore, MD 21202
Tel.:  (410) 528-5600
Fax:  (410) 528-5650
mccormackt@ballardspahr.com
mcgeoghm@ballardspahr.com

John B. Langel
David S. Fryman
Alexandra Bak-Boychuk
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Tel.:  (215) 665-8500
Fax:  (215) 864-8999
langel@ballardspahr.com
fryman@ballardspahr.com
bakboychuka@ballardspahr.com

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     THE ALLEGATIONS OF THE COMPLAINT ............................................................. 3

III.    ARGUMENT ............................................................................................................... 5

        A.      Legal Standard ................................................................................................ 5

        B.      Plaintiff Fails to Plead a Plausible FLSA Claim ........................................... 6

                1.      Plaintiff Fails to Plead Facts Establishing a Primary Employer-
                        Employee Relationship ....................................................................... 6

                2.      Without Identification of an Employer-Employee Relationship,
                        Plaintiff's Derivative Theories of Liability Fail ............................... 9

                3.      Plaintiff Fails to Plead Plausible Collective Action Allegations ............. 13

                4.      Plaintiff Fails to Plead A Single Plausible Instance of
                        Underpayment in Violation of the FLSA ............................................ 17

        C.      Plaintiff's State Law Claims Should Be Dismissed ...................................... 21

                1.      Plaintiff's Allegations Do Not Support Her MWHL Claim ................... 21

                2.      Plaintiff's MWPCL Claim Should Be Dismissed ................................. 21

                3.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed ................... 22

IV.     CONCLUSION .......................................................................................................... 23

Defendants University of Maryland Medical System Corporation and Maryland General Hospital, Inc. (hereinafter "defendants"), respectfully submit this memorandum in support of their motion to dismiss the Complaint.

## I.    INTRODUCTION

Plaintiff Sandra T. Quickley seeks to bring a Fair Labor Standards Act ("FLSA") collective action and parallel state law claims against defendants based on little more than the conclusory allegation that defendants maintained timekeeping policies that deprived employees of pay for time worked during meal breaks.  Like so many similar complaints brought against hospitals and health systems across the country, the Complaint fails to state a claim.

First, plaintiff fails to allege facts sufficient to establish the primary building block of an FLSA claim – an employer-employee relationship.  Without providing facts to establish an employment relationship, the Complaint asserts that she is simultaneously employed by defendants and nine other entities not named in the caption but listed in the body of the Complaint.  Absent a clearly-stated employment relationship between plaintiff and these entities, plaintiff cannot assert a violation of the FLSA.  Having failed to pinpoint this relationship with any clarity, plaintiff's passing reference to derivative theories of liability – whether "single, joint or otherwise" – likewise must fail.

Next, plaintiff also fails to support  her putative collective action claim with any common illegal policy.  Instead, she simply points to the existence of a timekeeping policy that automatically deducts at least thirty minutes for a meal break.  A growing body of case law, developed largely as a result of substantially similar hospital overtime litigation, makes clear that such policies do not violate the FLSA as a matter of law.  Nor does plaintiff state a claim under the FLSA by alleging that defendants do not ensure that employees take an uninterrupted meal break each day or that defendants require employees to report missed meal breaks.

Plaintiff further fails to allege a single, plausible instance of underpayment sufficient to state a claim under the pleading standards set forth in Iqbal and Twombly.  She fails to (1) describe a single instance where she performed compensable work during a meal break, recorded that time, and received no pay; (2) provide any factual detail about the type of work performed during any meal break; or (3) allege a specific instance where she was not paid at applicable overtime rates, a concrete or approximate number of unpaid overtime hours worked, or even an estimate of how frequently this happened.

For the same reasons, plaintiff cannot state a plausible claim under the Maryland Wage and Hour Law ("MWHL") (Count II) or for unjust enrichment/quantum meruit (Count IV), the latter of which is preempted by plaintiff's FLSA claim.  Finally, plaintiff's Maryland Wage Payment and Collection Law ("MWPCL") claim (Count III) must be dismissed because the MWPCL does not provide a cause of action based on an employer's alleged failure to pay overtime.

For these reasons, this Court should join the growing number of courts rejecting threadbare wage and hour allegations like those asserted here and dismiss the Complaint with prejudice.[1]

---

[1]   See, e.g., Wolman v. Catholic Health Sys. of Long Island, Inc., No. 10-1326, 2012 U.S. Dist. LEXIS 21654 (E.D.N.Y. Feb. 16, 2012); Davis v. Abington Mem'l Hosp., No. 09-5520, 2011 U.S. Dist. LEXIS 102211(E.D. Pa. Sept. 8, 2011); Pruell v. Caritas Christi, No. 09-11466, June 13, 2011 Transcript of Motion Hearing (D. Mass. June 13, 2011) (attached as Exhibit A); DeSilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497 (E.D.N.Y. 2011); Manning v. Boston Med. Ctr. Corp., No. 09-11463, 2011 U.S. Dist. LEXIS 19197 (D. Mass. Feb. 28, 2011); Sampson v. Medisys Health Network Inc., No. 10-1342, 2011 U.S. Dist. LEXIS 12697 (E.D.N.Y. Feb. 8, 2011); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., Nos. 10-2661, 10-2662, 10-2683, 10-3247, 2011 U.S. Dist. LEXIS 8585 (S.D.N.Y. Jan. 28, 2011); see also Cavallaro v. UMass Mem'l Health Care, Inc., No. 09-40152, 2011 U.S. Dist. LEXIS 61003 (D. Mass. June 8, 2011).

## II.   THE ALLEGATIONS OF THE COMPLAINT

Named as defendants in the caption of the Complaint are the University of

Maryland Medical System Corporation (referenced in the body with the acronym "UMMS") and

Maryland General Hospital, Inc.  In paragraph fourteen, plaintiff identifies four other health

systems and five hospitals that, together with Maryland General Hospital, "comprise UMMS."

(Compl. ¶ 14.)[2]  Plaintiff then, "[f]or purposes of this [C]omplaint," collectively labels UMMS

and Maryland General Hospital as a single "Defendant" throughout.  (Id. ¶ 21.)

The Complaint alleges that the eleven entities identified in paragraph fourteen are

"the employer – single, joint or otherwise – of the Plaintiff and class members."  (Compl. ¶ 20.)

In support of that legal contention, the Complaint asserts only that these entities (1) are "related

organizations" through "common membership, governing bodies, trustees and/or officers and

benefit plans" (id. ¶ 17), (2) "share common management and have common ownership" (id.

¶ 19), and (3) "centrally and collectively dictated, controlled, and ratified" their "wage and hour

and all related compensated policies" (id. ¶ 18).

The Complaint does not identify which of the eleven entities actually employed

plaintiff but rather states only that "Defendant" employed her.  (Compl. ¶¶ 59 ("Defendant

employed Plaintiff and each member of the Collective Action Class consistent with the terms of

the FLSA."), 62 ("Plaintiff and class members were employees of Defendant within the meaning

---

[2]      The ten hospitals and health systems the Complaint includes in the definition of UMMS
are:  University of Maryland Medical Center, Baltimore Washington Medical Center,
Chester River Health System, Civista Health System, Kernan Orthopaedics and
Rehabilitation, Maryland General Hospital, Mt. Washington Pediatric Hospital, Shore
Health System, University Specialty Hospital and Upper Chesapeake Health System.
(Id.)  Aside from Maryland General Hospital, none of the entities in paragraph fourteen
have been named in the caption of the Complaint or served with process in accordance
with Federal Rule of Civil Procedure 4.  See Fed. R. Civ. P. 4(c)(1); Fed. R. Civ. P. 10(a).

of the FLSA[.]").)  Indeed, other than noting that plaintiff "worked at" Maryland General

Hospital, only a handful of paragraphs discuss plaintiff's "employment" with "Defendant," and

then only in the most general of terms.  (Compl. ¶¶ 10, 27, 28, 29, 30, 37.)  For instance, plaintiff

claims that she was "regularly required to perform compensable work during unpaid 'meal

breaks'" (id. ¶ 10), that she "often perform[ed] compensable work for Defendant during [her]

uncompensated 'meal breaks'" (id. ¶ 27), or that she "often worked without compensation" (id.

¶ 37).  Plaintiff claims that as a result of the policies and conduct of "Defendant," she was

"routinely not completely relieved of [her] job duties" (id. ¶ 28), "routinely . . . required to stay

at [her] duty post" (id. ¶ 29), and "routinely suffer[ed] or permit[ted] . . . to perform . . . work"

during her meal breaks (id. ¶ 30).

   There are no facts in plaintiff's "Factual Background" concerning the actual work

plaintiff performed during her own meal breaks and the circumstances surrounding defendants'

alleged failure to pay her for that work.  Instead, plaintiff devotes the bulk of that "Factual

Background" to the conclusory assertion that "Defendant's" generally applicable timekeeping

and pay policy failed to compensate her and class members for time worked during meal breaks.

(Compl. ¶¶ 24-37.)  Plaintiff alleges that "[u]nder the Defendant's meal break deduction practice

and policy, Defendant's computerized time and attendance system automatically deducts a 30

minute meal period per work shift."  (Id. ¶ 24.)  According to plaintiff, this policy violates the

FLSA because (1) "Defendant does not ensure that Plaintiff and the class members are

completely relieved of their work duties during their uncompensated 'meal breaks'" (id. ¶ 28),

(2) "Defendant knows or has reason to believe that Plaintiff and class members perform work

during their unpaid 'meal breaks'" (id. ¶ 34), and (3) "Defendant's" practice and policy

"improperly and illegally shifts the burden to Plaintiff and class members to ensure that non-qualifying 'meal breaks' are not deducted from their pay" (id. ¶ 26).

## III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321, 325-26 (4th Cir. 2001). Although this pleading standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint that offers nothing more than "'labels and conclusions[,] . . . a formulaic recitation of the elements of a cause of action . . . [or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard. Iqbal, 129 S.Ct. at 1950-51 (citing Twombly, 550 U.S. at 557). "The presence [] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" cannot support the legal conclusion. Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001). Thus, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 556 (retiring the "no set of facts" test of Conley v. Gibson, 355 U.S. 41 (1957)).

Under this new paradigm, a court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. First, the court must identify and weed out allegations that are nothing more than legal conclusions and, therefore, "not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court

should identify the non-conclusory, well-pleaded factual allegations, "assume their veracity [but] then determine whether they plausibly give rise to an entitlement of relief." Id. If the factual allegations, assumed true, are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding that no wrongdoing occurred. Id.[3]

### B.   Plaintiff Fails to Plead a Plausible FLSA Claim

The Complaint should be dismissed for failure to allege (1) facts sufficient to establish a primary employment relationship with any of the eleven entities collectively identified as "Defendant" in the Complaint or (2) a single plausible instance of underpayment under the pleading standards set forth in Iqbal and Twombly.

### 1.   Plaintiff Fails to Plead Facts Establishing a Primary Employer-Employee Relationship

"The basic prerequisite for any FLSA action is an employment relationship between the plaintiffs and defendant." Davis, 2011 U.S. Dist. LEXIS 102211, at *17 (citing Iqbal, 129 S.Ct. at 1949). In an FLSA collective action, therefore, every defendant must have been the employer of at least one named plaintiff. Id. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." Jacobson v. Comcast Corp., 740 F. Supp. 2d 683, 688 (D. Md. 2010) (citing 29 U.S.C. § 203(d)). To "employ" means "to suffer or permit to work," which courts have construed to mean that "an entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer." Jacobson, 740 F. Supp. 2d at 688 (citing 29 U.S.C. § 203(g)); see Cavallaro, 2011 U.S. Dist. LEXIS 61003, at *9.

---

[3]   Defendants accept as true plaintiff's non-conclusory factual allegations for purposes of this motion only.

When a plaintiff fails to set forth basic information about the employment relationship between herself and any of the entities that she claims are her employer, her FLSA claim must fail.  For instance, in <u>Manning v. Boston Med. Ctr. Corp.</u>, No. 09-11463, 2011 U.S. Dist. LEXIS 19197 (D. Mass. Feb. 28, 2011), the court dismissed similarly vacant (yet more abundant) allegations against a health care provider, stating:

> Plaintiffs' complaint runs to 25 pages and 158 paragraphs, yet it lacks even the most basic information about their claims. Their names appear in the caption, the introductory paragraph, and a paragraph titled "Named Plaintiffs" which says only that they were employees under the FLSA who reside and were employed within the district (Compl. ¶ 75). Which  defendant did they work for? The complaint includes the vague allegation that the 20 defendants "are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other' (id. at ¶ 25), which is no answer at all.

2011 U.S. Dist. LEXIS 19197, at *3-4; <u>see also</u> <u>Davis</u>, 2011 U.S. Dist. LEXIS 102211, at *18 (holding, in the context of an automatic meal break deduction collective action against a health system, "Defendants contend, inter alia, that Plaintiffs have not sufficiently pled that any particular defendant is an "employer" under the FLSA.  The Court agrees.  The number of alleged employers listed in each complaint ranges from 66 to 218, with 86 entities and two individuals listed in the <u>Ruff</u> complaint.  That bounty of potential employers notwithstanding, Plaintiffs somehow fail to allege facts establishing a single employer-employee relationship."); <u>Cavallaro</u>, 2011 U.S. Dist. LEXIS 61003, at *19-20 (dismissing FLSA claims based on an automatic meal break deduction for lack of jurisdiction because plaintiffs had no standing to sue hospital entities where they failed to allege facts to establish an employment relationship with any of the entities:  plaintiffs had "not alleged that any of the corporate entities make decisions regarding their compensation or method of employment.  And they have not alleged that their employment records are maintained by any of the defendants."); <u>Nakahata</u>, 2011 U.S. Dist.

LEXIS 8585, at *22 (granting motions to dismiss FLSA meal break claims in four related actions against health care systems because plaintiffs failed to specify which entities, among the many named defendants, employed them).

Turning to the Complaint here, although the number of hospitals and health systems plaintiff identifies is fewer than in the cases cited above, the fundamental flaw is the same – in identifying all eleven entities as her collective employer (see Compl. ¶¶ 10, 14, 21), plaintiff fails to allege facts sufficient to establish an employment relationship under the FLSA with respect to any one of them.  The only fact plaintiff pleads that suggests an employment relationship with any entity is the location – Maryland General Hospital – where she "worked." (Id. ¶ 10.)  Yet that is far from sufficient to establish Maryland General Hospital as her employer. Indeed, plaintiff does not identify:

- the entity to which she reported;

- which entity set her rate and method of pay;

- which entity issued her paycheck;

- which entity supervised or controlled her work schedule and other terms and conditions of employment; or

- which entity maintained her employment records.

Without those facts, the Complaint's assertion that Chester River Health System, Mt. Washington Pediatric Hospital and eight other hospitals and health systems at which plaintiff presumably did not "work" collectively served as her "employer," is simply a legal conclusion that is not entitled to the assumption of truth.[4]

---

[4]     In this regard, the allegations of the Complaint are distinguishable from those found sufficient in other cases such as Speert v. Proficio Mortgage Ventures, LLC, No. 10-718, 2010 U.S. Dist. LEXIS 115891 (D. Md. Nov. 1, 2010).  There, Judge Bennett found the

(continued...)

In sum, the Complaint's lack of alleged facts concerning plaintiff's "employer" reflect the "antithesis of 'notice' pleading." <u>Davis</u>, 2011 U.S. Dist. LEXIS 102211, at *24. Accordingly, plaintiff's FLSA claim in Count I should be dismissed for failure to allege an identifiable employment relationship.

### 2.    Without Identification of an Employer-Employee Relationship, Plaintiff's Derivative Theories of Liability Fail

Having failed to adequately plead an employer-employee relationship, plaintiff's derivative theories of liability – cursorily identified as "single, joint or otherwise" (Compl. ¶ 20) – also must fail.

_____

(...continued)

following allegations concerning two alleged defendant employers – an entity and an individual – sufficient to withstand a motion to dismiss:

o Plaintiffs  were employed by Defendant PMV from July, 2009 through October, 2009. Plaintiffs Nieves, Sandford and Speert were employed by Defendants and were responsible for generating mortgage loans for PMV. . . Plaintiff David Rascoe [] was employed by Defendants to manage the satellite branch and to help recruit other branches, and primarily performed his duties inside of the office. SAC, ¶ 6.

o Defendant Hyatt has been actively engaged in the management and direction of employees, including the Plaintiffs, at PMV, including the operation of the mortgage business and employee pay matters, has possessed and exercised authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at PMV. SAC, ¶ 3.

o Both Defendants were actively engaged in the management and direction of Plaintiffs and other employees at PMV, including but not limited to, including the operation of the mortgage business, the hiring and firing of employees and employee pay matters, and have possessed and exercised authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at PMV. SAC, ¶ 7

2010 U.S. Dist. LEXIS 115891, at *6-7.

In the context of similar hospital overtime cases, courts in other jurisdictions have agreed that derivative theory of liabilities cannot fill the factual void created by the absence of a primary employment relationship. For example, in <u>Davis</u>, the court refused to recognize the plaintiffs' derivative liability theories given their failure to allege facts establishing this necessary prerequisite:

> Although these 86 entities, while separate units, could be acting jointly to control the terms of Plaintiffs' employment, the Court cannot assess whether a joint-employer relationship exists without facts alleging the basic terms of the primary employment-employer relationship. Thus, Plaintiffs have put the cart before the horse: they fill the Amended Complaint with conclusory labels describing the relationships between the Defendants, but never allege for which of the 86 entities they actually worked or the nature of the relationship between those entities. And without facts alleging who exercised primary control over Defendants, the Court cannot embark on a joint-employer analysis.

2011 U.S. Dist. LEXIS 102211, at *20; <u>see</u> <u>Cavallaro</u>, 2011 U.S. Dist. LEXIS 61003, at *16 ("[P]laintiffs have not alleged facts that establish that any one of the individual defendants is their nominal employer. Without the foundation for in the first instance identifying which defendant is plaintiffs' legal employer, it would serve no purpose to inquire into whether the seven other corporate defendants are sufficiently interrelated so as to constitute one integrated employer.").

Here too, plaintiff has effectively alleged that "all of the defendants are all of [her] employers." <u>Id.</u> (<u>See</u> Compl. ¶¶ 10 ("Plaintiff was employed by Defendant[.]"), 21 ("For purposes of this complaint, UMMS and MGH are hereinafter collectively referred to as "Defendant."), 14 (identifying the ten hospitals and health systems that comprise UMMS).) Plaintiff's derivative theories of liability thus stall before getting started.

Even assuming plaintiff had identified a primary employment relationship, she still fails to allege facts supporting her "single, joint or otherwise" theories of liability. To

determine whether a joint employment relationship exists, many courts, including courts in this

district, use the following four factors:

> 1) Authority to hire and fire employees;
> 2) Authority to supervise and control work schedules or employment conditions;
> 3) Authority to determine the rate and method of payment; and
> 4) Maintenance of employment records.

Jacobson, 740 F. Supp. 2d at 689 (citing Bonnette v. Cal. Health and Welfare Agency, 704 F.2d

1465, 1470 (9th Cir. 1983)); see Lepkowski v. Telatron Mktg. Group, 766 F. Supp. 2d 572, 576-

83 (W.D. Pa. 2011) (applying Judge Motz's analysis in Jacobson to grant motion to dismiss

because plaintiff failed to allege that defendant was a joint employer under the FLSA).

Regardless of the test applied, the ultimate inquiry at the heart of each is whether, as a matter of

"economic reality," an employment relationship exists.  See Lepkowski, 766 F. Supp. 2d at 577

(citing Jacobson, 740 F. Supp. 2d at 688-89).

     Here, plaintiff asserts only three legal conclusions in support of her attempt to

plead an "economic reality" between eleven possible putative joint employers:

- The entities comprising UMMS (1) are "related organizations" through "common membership, governing bodies, trustees and/or officers and benefit plans" (id. ¶ 17),

- The "wage and hour and all related compensated policies" at UMMS and the entities that comprise UMMS are "centrally and collectively dictated, controlled, and ratified" (id. ¶ 18), and

- UMMS and its alleged entities "share common management and have common ownership" (id. ¶ 19).

Although these conclusions may hint at some general commonalities among these entities, they

fail to address whether any of the entities exhibited sufficient control over plaintiff's

employment to be considered joint employers under the FLSA.[5]  See Wolman, 2012 U.S. Dist.

LEXIS 21654, at *14-15 (holding allegations that defendants collectively "operate over 25 health

care facilities and centers and employ approximately 15,000 individuals," are "touted as an

integrated healthcare system," have one website that "lists various awards and recognitions for

its member institutes," have a system-wide approach to measuring patient satisfaction and health

care quality, have a "centralized system for job posting," and use an automatic meal deduction

policy did not establish that defendants exercised sufficient control over plaintiffs to be

considered joint employers); Leber v. Berkley Vacation Resorts, Inc., No. 08-01752, 2009 U.S.

Dist. LEXIS 66928, at *16-17 (D. Nev. July 27, 2009) ("The fact that all Defendants conduct

business in the same industry and utilize similar compensation schemes is insufficient to

establish joint employer status."); Hibbs-Rines v. Seagate Techs, LLC, No. 08-05430, 2009 U.S.

Dist. LEXIS 19283, at *14 (N.D. Cal. Mar. 2, 2009) ("While plaintiff is not required to

conclusively establish that defendants were her joint employers at the pleading stage, plaintiff

must at least allege some facts in support of this legal conclusion.") (emphasis in original).[6]

---

[5]     Nor are these conclusions sufficient to establish the degree of interrelatedness required to hold separate companies liable as single employers, particularly without the anchor of a primary employment relationship.  See Davis, 2011 U.S. Dist. LEXIS 102211, at *22 ("The single-employer theory of liability is likewise of no help to Plaintiffs because of their pleading deficiencies. . . . Plaintiffs' failure to identify that any single defendant as their employer is fatal."); Cavallaro, 2011 U.S. Dist. LEXIS 61003, at *16 ("Without the foundation for in the first instance identifying which defendant is plaintiffs' legal employer, it would serve no purpose to inquire into whether the . . . other corporate defendants are sufficiently interrelated so as to constitute one integrated employer.").

[6]     Jennings v. Rapid Response Delivery, Inc., No. 11-0092, 2011 U.S. Dist. LEXIS 65862 (D. Md. June 16, 2011), does not require a different result.  In that case, Judge Quarles agreed that plaintiffs had sufficiently alleged a joint employment relationship through their allegations that "(1) Rapid Response had a contractual relationship to assign drivers to Maryland Tire for its delivery and distribution needs, (2) the contract required that the Plaintiffs exclusively serve Maryland Tire, (3) Rapid Response set the Plaintiffs' wages and hours based on their contract with Maryland Tire, and (4) Rapid Response would

(continued...)

Therefore, even if plaintiff had succeeded in alleging a primary employment relationship, the legal conclusions she asserts as an afterthought do not support holding defendants liable as employers – "single, joint or otherwise."

3.  **Plaintiff Fails to Plead Plausible Collective Action Allegations**

A plaintiff purporting to bring a collective claim on behalf of others must at a minimum allege a common policy that violates the FLSA.  Blaney v. Charlotte-Mecklenburg Hosp. Auth., No. 10-592, 2011 U.S. Dist. LEXIS 105302, at *18-19 (W.D.N.C. Sept. 16, 2011); Saleen v. Waste Mgmt. Inc., 649 F. Supp. 2d 937, 939-40 (D. Minn. 2009).  Here, the automatic meal break deduction policy alleged in the Complaint does not violate the FLSA.  Indeed, an increasingly large body of law – much of which has developed in the context of meal break deduction cases just like this one – makes clear that:  (1) the implementation and use of an automatic meal break deduction does not violate the FLSA; (2) the FLSA does not require that an employer provide employees with a meal break; and, (3) requiring employees to report time worked in order to be paid for that time does not violate the FLSA.

a.  **The Alleged Automatic Meal Break Deduction Does Not Violate the FLSA**

Plaintiff's theory that defendants' meal break deduction policy violates the FLSA "is without merit."  Wolman, 2012 U.S. Dist. LEXIS 21654, at *23.  See Blaney, 2011 U.S. Dist. LEXIS 105302, at *19 ("As Defendant correctly notes, a policy which automatically deducts pay

_____

(...continued)

terminate drivers at Maryland Tire's request."  2011 U.S. Dist. LEXIS 65862, at *10.  Here, in contrast, the Complaint contains just the four conclusory allegations identified above (Compl. ¶¶ 17-20), none of which demonstrate any control by any of the entities identified in the Complaint over the terms and conditions of plaintiff's employment.

for meal periods is not, by itself, unlawful under the FLSA."); <u>Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.</u>, No. 10-948, 2011 U.S. Dist. LEXIS 146056, at *13 n.2 (W.D. Pa. Dec. 20, 2011) (decertifying an FLSA collective action based on alleged automatic meal break deduction policy and noting that a "growing consensus of federal courts have recognized that '[s]tanding alone, an employer policy providing automatic deductions for meal breaks does not violate the FLSA.'"); <u>Camesi v. Univ. of Pittsburgh Med. Ctr.</u>, No. 09-85, 2011 U.S. Dist. LEXIS 146067, at *14-16 (W.D. Pa. Dec. 20, 2011) ("Since the undersigned's grant of conditional certification, a growing consensus of federal courts has rejected the notion that collective action treatment of automatic deductions is warranted under an FLSA 'burden-shifting' theory."); <u>White v. Baptist Mem'l Health Care Corp.</u>, No. 08-2478, 2011 U.S. Dist. LEXIS 52928, at *24-25 (W.D. Tenn. May 17, 2011); <u>Frye v. Baptist Mem. Hosp.</u>, No. 07-2708, 2010 U.S. Dist. LEXIS 101996, at *14-16 (W.D. Tenn. Sept. 27, 2010) ("[S]tanding alone, an employer policy providing automatic deductions for meal breaks does not violate the FLSA" and, thus, "Baptist's mere adoption of a system that, by default, deducts meal breaks from its employees' compensation does not constitute a unified policy of FLSA violations capable of binding the [p]laintiffs together").[7]

Moreover, the United States Department of Labor ("DOL") explicitly has noted that such policies are acceptable under the FLSA:

> [T]he employer's proposal to discontinue the use of a time clock to record the meal period [and substitute an automatic deduction with employee notifying employer if she worked over lunch] does not violate the FLSA so long as the employer accurately records actual

---

[7]   See also <u>Zivali v. AT&T Mobility, LLC</u>, 784 F. Supp. 2d 456, 462-63 (S.D.N.Y. 2011); <u>Wolman v. Catholic Health Sys. of Long Island</u>, No. 10-1326, 2011 U.S. Dist. LEXIS 48223, at *4 (E.D.N.Y. May 5, 2011); <u>Cason v. Vibra Healthcare</u>, No. 10-10642, 2011 U.S. Dist. LEXIS 47160, at *8 (E.D. Mich. May 3, 2011); <u>Ledbetter v. Pruitt Corp.</u>, No. 05-329, 2007 U.S. Dist. LEXIS 10243, at *13 (M.D. Ga. Feb. 12, 2007) ("A policy of automatic meal deductions does not per se violate the FLSA.") (citation omitted).

hours worked, including any work performed during the lunch period.

Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter (May 14, 2007), <u>available at</u> http://www.dol.gov/whd/opinion/FLSANA/2007/2007_05_14_01NA_FLSA.pdf; <u>see</u> Wage & Hour Div., U.S. Dep't of Labor, Fact Sheet #53 – The Health Care Industry and Hours Worked (July 2009), <u>available at</u> http://www.dol.gov/whd/regs/compliance/whdfs53.pdf (explaining, with examples, that a policy of automatically deducting time for a meal break does not violate the FLSA, but if an employee works during that break, the employer is required to pay the employee for that time, assuming the employee notifies the employer of the time worked).[8]

Because an automatic deduction for meal breaks is not an illegal timekeeping policy, the allegation that defendants maintain such a timekeeping system does not support an FLSA collective action claim.

> **b.   The FLSA Does Not Require Employers to Provide Meal Breaks for Non-Exempt Employees**

Despite the overwhelming authority upholding automatic meal break deduction policies like the one alleged in the Complaint, plaintiff claims that defendants have violated the FLSA because "Defendant does not prohibit Plaintiff and class members from working during their 'meal breaks' and routinely suffers or permits Plaintiff and class members to perform such work." (Compl. ¶ 30.)

The FLSA does not require that an employee receive a meal break. <u>Wolman</u>, 2012 U.S. Dist. LEXIS 21654, at *23-24; <u>see</u> <u>Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.</u>, No. 09-379, 2009 U.S. Dist. LEXIS 47163, at *16 (W.D. Pa. June 1, 2009) ("Defendants

---

[8]    Agency opinion letters and other statutory interpretations are "entitled to respect." <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)).

are correct that the FLSA does not require employers to make meal breaks available."); U.S.

Dep't of Labor, Fair Labor Standards Act Advisor, "What does the Fair Labor Standards Act

*NOT* Require," http://www.dol.gov/elaws/esa/flsa/screen6.asp (last visited Apr. 10, 2012)

("**[T]he FLSA does not require** . . . meal or rest periods . . . .") (emphasis in original); Wage &

Hour Div., U.S. Dep't of Labor, Frequently Asked Questions,

http://www.dol.gov/whd/flsa/faq.htm (last visited Apr. 10, 2012) ("The FLSA does not require

breaks or meal periods be given to workers").  Allegations of work performed during meal

breaks alone, then, cannot form the basis of plaintiff's collective action claim.

### c.   Requiring Non-Exempt Employees to Report Time Worked Does Not Violate the FLSA

Finally, plaintiff alleges that defendants' policy is unlawful because it

"improperly and illegally shifts the burden to Plaintiff and class members to ensure that non-

qualifying 'meal breaks' are not deducted from their pay."  (Compl. ¶ 26.)

The FLSA does not prohibit requiring employees to record the time they work.

Frye, 2010 U.S. Dist. LEXIS 101996, at *20.  Nor does the FLSA mandate a particular form of

record keeping, so long as the employer's records are complete and accurate.  See 29 C.F.R.

§ 516.1(a) ("No particular order or form of records is prescribed by the regulations in this part.").

As the Frye court explained, an employer does not violate the FLSA by asking its employees to

record time worked during breaks in order to cancel the automatic deduction:

> A natural consequence of any employer's adopting an automatic
> deduction policy is that employees will be required to cancel the
> deduction if they work through meal breaks.  In this sense, any
> automatic deduction policy "shifts the burden" to employees.
> Because the FLSA permits automatic deduction policies, standing
> alone, this so-called "burden shift" cannot form the basis of an
> alleged FLSA violation.

2010 U.S. Dist. LEXIS 101996, at *20.

As explained by the DOL, "[e]mployers may use any timekeeping method they choose.  For example, they may use a time clock, have a timekeeper keep track of employee's work hours, <u>or tell their workers to write their own times on the records.  Any timekeeping plan is acceptable as long as it is complete and accurate.</u>"  Wage & Hour Div., U.S. Dep't of Labor, Fact Sheet # 21 – Recordkeeping Requirements Under the Fair Labor Standards Act (July 2008), <u>available at</u> http://www.dol.gov/whd/regs/compliance/whdfs21.pdf (emphasis added); <u>see</u> <u>Berger v. Cleveland Clinic Found.</u>, No. 05-1508, 2007 U.S. Dist. LEXIS 76593, at *38-39 (N.D. Ohio Sept. 29, 2007) (plaintiff's failure to follow procedure and report that he worked through lunch breaks precluded his FLSA claim).  Moreover "there is no legal requirement that employers maintain time clocks, that hours worked be contemporaneously recorded, or that employees be permitted to enter their own adjustments to a time record without verification by management." <u>Zivali</u>, 2011 U.S. Dist. LEXIS 50707, at *8-9 (citing 29 C.F.R. § 785.48).

Simply stated, plaintiff's allegations that defendants automatically deduct thirty minutes from their employees' daily hours for meal breaks and require employees to report missed meal breaks in order to be paid does not state a collective action claim under the FLSA as a matter of law.

**4.** **Plaintiff Fails to Plead A Single Plausible Instance of Underpayment in Violation of the FLSA**

To represent a class in a collective action, the named plaintiff must, consistent with <u>Twombly</u> and <u>Iqbal</u>, state a plausible individual FLSA claim.  <u>Pruell v. Caritas Christi</u>, No. 09-11466, 2010 U.S. Dist. LEXIS 101761, at *10 (D. Mass. Sept. 27, 2010) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 494 (1974)).  Plaintiff here fails to do so.

"To state a claim under 29 U.S.C. § 216(b), a plaintiff must allege that:  (1) the defendant was "engaged in commerce" as that phrase is defined by the FLSA; (2) [s]he was an "employee" as defined by the FLSA; and (3) [s]he worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty."  Mell v. GNC Corp., No. 10-945, 2010 U.S. Dist. LEXIS 118938, at *15 (W.D. Pa. Nov. 9, 2010) (citing Zhong v. August Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)); see also Landry v. Peter Pan Bus Lines, Inc., No. 09-11012, 2009 U.S. Dist. LEXIS 129873, at *3 (D. Mass. Nov. 20, 2009) ("To establish a violation of the FLSA for failure to pay overtime, a plaintiff must prove that . . . he worked more than 40 hours per week . . . .").

In the wake of wage and hour lawsuits filed against hospitals and health systems across the country over the past few years, courts have not hesitated to dismiss complaints like the one at issue here for failure to state a claim under Iqbal and Twombly.  Wolman, 2012 U.S. Dist. LEXIS 21654, at *36 (finding allegations that "any uncompensated time worked 'should have been paid at overtime rates when her scheduled shifts exceeded 40 hours in a week . . . or when the uncompensated time pushed her hours over 40 in a week'" to be legally insufficient to state an FLSA claim); Pruell, No. 09-11466, June 13, 2011 Transcript of Motion Hearing at 23-25 ("I think it is not sufficient simply to repeat the statutory standard in other language; in other words, to say, 'I worked over 40 hours and wasn't paid' is equivalent to saying, 'The statute requires payment for over 40 hours. I have a claim under that statute.' And I don't think that's enough anymore."); DeSilva, 770 F. Supp. 2d at 509 (dismissing FLSA claim because "it contained 'no factual allegations about when the alleged unpaid wages were earned (i.e., which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation- the heart of the claim.'") (citation omitted); Manning,

2011 U.S. Dist. LEXIS 19197, at *4 (dismissing FLSA claim where complaint did not allege

"even in the most approximate terms, the dates on which each of the named plaintiffs worked

during lunch breaks, the aggregate time of those lunch breaks, and the amount of unpaid

wages"); Sampson, 2011 U.S. Dist. LEXIS 12697, at *9-11 (dismissing FLSA claim because

conclusory allegations that plaintiffs worked "both under and in excess of forty [40] hours per

week" were insufficient without any facts alleged in support of those conclusions); Nakahata,

2011 U.S. Dist. LEXIS 8585, at *20-24 (dismissing FLSA claims based on unpaid overtime for

unspecified meal periods and breaks where plaintiffs failed to allege the approximate number of

overtime hours worked or when those unpaid wages were earned).[9]

   Likewise here, plaintiff alleges only that she "often worked without

compensation, including, but not limited to occasions when [she] worked in excess of forty hours

per week and [was] denied statutory overtime wages."  (Compl. ¶ 37.)  She fails to describe a

single example where she performed compensable work during a meal break, recorded that time,

and received no pay.  She also fails to provide any factual detail about the type of work that

---

[9] See also Pruell, 2010 U.S. Dist. LEXIS 101761, at *7; Wolman, 2010 U.S. Dist. LEXIS
137392, at *12-14; Harding v. Time Warner, Inc., No. 09-1212, 2009 U.S. Dist. LEXIS
72851, at *9 (S.D. Cal. Aug. 18, 2009) (dismissing FLSA claim because plaintiffs'
allegations that defendant failed to "pay and properly calculate overtime," "provide all
wages in a compliant manner," and "provide uninterrupted Meal Periods" were
conclusory under Twombly and "assigned no weight"); Deleon v. Time Warner Cable
LLC, No. 09-2438, 2009 U.S. Dist. LEXIS 74345, at *6-7 (C.D. Cal. July 17, 2009)
(plaintiff did not meet pleading standards by alleging that he and class members
"consistently worked in excess of eight (8) hours in a day, in excess of twelve (12) hours
in a day, and/or in excess of forty (40) hours in a week"); Jones v. Casey's Gen. Stores,
538 F. Supp. 2d 1094, 1102-03 (S.D. Iowa 2008) (dismissing FLSA claim where the
complaint did not, "'at least approximately, allege the hours worked for which these
wages were not received.'") (quoting Zhong, 498 F. Supp. at 628 (dismissing FLSA
claim)).

occupied her meal break.  Nor does she allege a specific instance where she was not paid at applicable overtime rates, a concrete or approximate number of unpaid overtime hours worked, or even an estimate of how frequently she did so.

Instead, plaintiff attempts to deflect her inability to state a claim under the FLSA by alleging that "[e]vidence generally reflecting the number of uncompensated hours . . . and compensation rates" is in the possession of "Defendant."  (Compl. ¶ 28.)  The Pruell court flatly rejected this argument:  "The facts necessary to state a claim . . . are not peculiarly within the possession of [the defendant].  The plaintiffs should know approximately how many hours they worked per week and their hourly rate or weekly wages."  2010 U.S. Dist. LEXIS 101761, at *11; see Mell, 2010 U.S. Dist. LEXIS 118938, at *23 ("While the Court agrees that discovery might be necessary in order for former employees to get copies of the 'uniform compensation system policy,' surely they would be able to estimate the time periods in which they worked without proper overtime compensation.").[10]

In sum, the Complaint is devoid of any facts concerning plaintiff's individual circumstances or claim.  Without anything more than a general statement that she often worked over forty hours a week without compensation, plaintiff's FLSA claim is equivalent to saying,

---

[10]     Even in those instances in which courts have not required the plaintiff to allege the precise amount owed or number of uncompensated hours, the court has nonetheless required substantially more detail than that alleged here.  See, e.g., Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 664-65 (D. Md. 2011) (finding that plaintiffs had provided the requisite level of factual support under Iqbal and Twombly by describing in detail the work activities that occupied their overtime hours); Calle v. Chul Sun Kang Or, No. 12-0716, 2012 U.S. Dist. LEXIS 5742, at *8 (D. Md. Jan. 18, 2012) (concluding plaintiff's allegations that defendant served as his supervisor and determined his rate and method of compensation, provided plaintiff with work that took "approximately sixty-six" hours per week to complete, and paid plaintiff "straight pay" at a fixed daily rate were sufficient to state an individual FLSA claim).

"The statute requires payment for over 40 hours.  I have a claim under that statute."  For this additional reason, Count I should be dismissed.

###### C.   Plaintiff's State Law Claims Should Be Dismissed

####### 1.   Plaintiff's Allegations Do Not Support Her MWHL Claim

The MWHL is "the State parallel" to the FLSA, Friolo v. Frankel, 819 A.2d 354, 361 (Md. 2003), and the requirements for pleading a claim under the MWHL "mirror those of the federal law," Brown v. White's Ferry, Inc., No. 11-1683, 2012 U.S. Dist. LEXIS 32466, at *10 (D. Md. Mar. 12, 2012).  Therefore, plaintiff's MWHL claim "stands or falls on the success of [her] claim[] under the FLSA."  Id.  For the same reasons that plaintiff fails to state a plausible claim under the FLSA (Count I), she likewise fails to state a claim under the MWHL (Count II).

####### 2.   Plaintiff's MWPCL Claim Should Be Dismissed

In Count III, plaintiff raises a MWPCL claim for payment of overtime allegedly due.  But, as this Court explained in McLaughlin v. Murphy, 372 F. Supp. 2d 465 (D. Md. 2004), damages under this statute are available only for failure to make regular payment or payment upon termination, not where a plaintiff's claims are based on an entitlement to the overtime wages themselves.  372 F. Supp. 2d at 474; see Butler, 800 F. Supp. 2d at 670 ("Other judges in this district have rejected plaintiffs' attempts to state claims for violation of the MWPCL where the parties' core dispute is whether plaintiffs were entitled to overtime wages at all and not whether overtime wages were paid on a regular basis or upon termination.") (citing McLaughlin, 372 F. Supp. 2d at 474-75; Williams v. Md. Office Relocators, LLC, 485 F. Supp. 2d 616, 621-22 (D. Md. 2007); Tucker v. Sys. Specialist Furniture Installation, Inc., No. 07-1357, 2007 U.S. Dist. LEXIS 71434, at *1-3 (D. Md. Sept. 26, 2007); Watkins v. Brown, 173 F. Supp. 2d 409,

416 (D. Md. 2001); <u>Fisher v. Rite Aid Corp.</u>, No. 09-1909, 2010 U.S. Dist. LEXIS 56383, at *5-

6 (D. Md. June 8, 2010)).[11]

In short, because the MWPCL does not explicitly provide a cause of action

directed at employer's failure to pay overtime, Count III should be dismissed.

### 3.  Plaintiff's Unjust Enrichment Claim Should Be Dismissed

In Count IV, plaintiff alleges an unjust enrichment and quantum meruit claim.

This claim should be dismissed because (1) it is preempted by the FLSA and, in any event, (2) it

is unsupported by any factual averments.

First, the exclusive remedial scheme Congress prescribed in the FLSA precludes

plaintiff's attempt to construct a state common law claim out of her FLSA allegations.  <u>See</u>, <u>e.g.</u>,

<u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 194 (4th Cir. 2007) (dismissing FLSA-based

contract, negligence and fraud claims as preempted by FLSA because "Congress prescribed

exclusive remedies in the FLSA for violations of its mandate"); <u>Bouthner v. Cleveland Constr.

Inc.</u>, No. 11-244, 2011 U.S. Dist. LEXIS 79316, at *21-22 (D. Md. July 21, 2011) (holding that

"[i]f Plaintiffs could evade the FLSA's 'unusually elaborate enforcement scheme . . . simply by

suing the Defendants based on the theory of quantum meruit, then the FLSA's enforcement

mandates would be 'superfluous.'") (citing <u>Anderson</u>, 508 F.3d at 192); <u>see also</u> <u>Farmer v.

DirectSat USA, LLC</u>, No. 08-3962, 2010 U.S. Dist. LEXIS 105738, at *47 (N.D. Ill. 2010)

(holding that "the FLSA preempted Plaintiffs' claims of unjust enrichment and quantum

meruit").

---

[11]  The recent amendment to the MWPCL to include "overtime" in the definition of "wage" does not change this result because the statute still does not authorize a cause of action for overtime compensation.  <u>See</u> <u>Calle</u>, 2012 U.S. Dist. LEXIS 5742, at *11-13 (dismissing MWPCL claim despite statutory definition of "wage" due to limitation of causes of action under the statute).

Second, in order to state this claim, plaintiff must allege that she was wrongfully terminated in breach of an employment contract.  See McLaughlin, 372 F. Supp. 2d at 471 ("Quantum meruit is a common law cause of action that may be used to obtain back wages from an employer when an employment contract is wrongfully terminated by the employer.") (emphasis added) (citing Mogavero v. Silverstein, 790 A.2d 43, 55 (2002)).  Here, other than the dates of her employment, plaintiff does not specify that she was wrongfully terminated or that her employment was governed by a contract that was breached by her termination.  Accordingly, Count IV likewise should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant their Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: April 10, 2012

/s/ Timothy F. McCormack
Timothy F. McCormack
(Fed. Bar No. 03565)
Michelle M. McGeogh
(Fed. Bar No. 028778)
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Baltimore, MD 21202
Tel.:  (410) 528-5600
Fax:   (410) 528-5650
mccormackt@ballardspahr.com
mcgeoghm@ballardspahr.com

*Counsel for University of Maryland Medical System Corporation and Maryland General Hospital, Inc.*

OF COUNSEL:
John B. Langel
David S. Fryman
Alexandra Bak-Boychuk
Ballard Spahr LLP

1735 Market Street, 51st Floor
Philadelphia, PA  19103
Tel.:  (215) 665-8500
Fax:  (215) 864-8999
langel@ballardspahr.com
fryman@ballardspahr.com
bakboychuka@ballardspahr.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2012, a true and correct copy of the

foregoing was served via electronic notification to:

E. David Hoskins
The Law Offices of E. David Hoskins, LLC
2 Hamill Road, Suite 362
Baltimore, MD 21210

Gary F. Lynch
Carlson Lynch LLP
36 Jefferson Street
P.O. Box 7635
New Castle, PA 16107

Gerald D. Wells, III
Faruqi and Faruqi LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046

/s/ Timothy F. McCormack