## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| SANDRA T. QUICKLEY, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | )<br>) |
| UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION and MARYLAND GENERAL HOSPITAL, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Civil Action No.: 12-321

Filed Electronically

<u>**JURY TRIAL DEMANDED**</u>

## <u>FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT [1]</u>

Plaintiff, Sandra T. Quickley, on behalf of herself and others similarly situated, files the following Amended Complaint, averring as follows:

1.     This is a nationwide collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), brought on behalf of plaintiff and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, as follows:

> All persons employed within the three years preceding the filing of this action at Maryland General Hospital, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break" (the "Collective Action Class").

---

[1] A comparison copy is filed as an attachment hereto.

2.     In addition to the nationwide FLSA claims, Plaintiff brings this action as a state-wide class action on behalf of all persons who, at any time during the past three years and up until the date of entry of judgment, are or were employed by Maryland General Hospital, Inc., to recover all unpaid wages under the Maryland Wage and Hour Law, ("MWHL"), Md. Code Ann., Labor & Employment, §3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, §3-501 *et seq.*; and Maryland common law (collectively "Maryland state law claims").

3.     Plaintiff brings the Maryland state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons similarly situated:

> All persons employed within the three years preceding the filing of this action at Maryland General Hospital, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break" (the "MD State Law Class").

4.     As explained herein, under applicable employment laws, Plaintiff and class members are entitled to compensation for all hours worked. However, Defendant, Maryland General Hospital, Inc., employs a uniform policy and practice, whereby Plaintiff and class members are subjected to an automatic deduction on their daily time records for their scheduled meal break, regardless of whether they actually receive such meal break, within the meaning of the

applicable wage and hour laws. Indeed, Plaintiff and class members are often required to work through all or part of their meal break.

5.     Due to the nature of their job duties and responsibilities, Plaintiff and members of the class rarely had a full uninterrupted meal break and regularly were required to perform some of their job duties during their meal break. Due to Defendants' policy of automatically deducting a full meal break from their daily time, Plaintiff and members of the class were not paid for the time they worked during their interrupted meal break. Accordingly, Plaintiff and class members were illegally under-compensated for their work.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

7.     This Court has original jurisdiction over Plaintiff's Maryland state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) (2), because, upon information and belief, at least one of the members of the MD State Law Class is a citizen of a state different than Defendants and the matter in controversy exceeds the sum or value of $5,000,000.

8.     In addition, this Court has supplemental jurisdiction under 28 U.S.C. §1367 over the Maryland state law claims because those claims derive from a common nucleus of operative facts.

9.     Venue for this action properly lies in the District of Maryland, pursuant to 28 U.S.C. §1391(b), because the claim arose in this judicial district.

## PARTIES

10.     Plaintiff, Sandra T. Quickley, is an adult individual residing in Baltimore County, Maryland, and is a citizen of Maryland. Plaintiff was employed by Defendants from January 20, 1992 until June 14, 2011 and worked at Maryland General Hospital in the Medical Surgical Unit. Plaintiff was regularly required to perform compensable work during unpaid "meal breaks." Plaintiff's pay statements indicate that she was employed by "Maryland General Hospital University of Maryland Medical System" at "827 Linden Avenue, Baltimore, Maryland 21201" in "Department # 6180."

11.     For purposes of the Collective Action Class, Plaintiff consents in writing to be a party to this collective action pursuant to 29 U.S.C. §216(b).

12.     Defendant, University of Maryland Medical System Corporation (hereinafter referred to as "UMMS") was created in 1984 when the state-owned University Hospital became a private, nonprofit organization. It has evolved into a multi-hospital system with academic, community and specialty service missions reaching every part of the state and beyond. UMMS is, upon information and belief, a citizen of Maryland.

13.     UMMS has 15,000 employees, approximately 2,300 licensed beds, 115,000 annual patient admissions and gross patient revenues of $2 billion.

14.     The hospitals and health systems that comprise UMMS include the following: University of Maryland Medical Center; Baltimore Washington Medical Center; Chester River Health System; Civista Health System; Kernan

Orthopaedics and Rehabilitation; Maryland General Hospital; Mt. Washington Pediatric Hospital; Shore Health System; University Specialty Hospital and Upper Chesapeake Health System.

15.     UMMS is headquartered at 22 South Greene Street, Baltimore, Maryland 21201.

16.     Defendant, Maryland General Hospital, Inc. (hereinafter referred to as "MGH") is a hospital located at 827 Linden Avenue, Baltimore, Maryland 21201. MGH is a hospital operated by UMMS. MGH is, upon information and belief, a citizen of Maryland.

17.     UMMS and the hospitals and health systems that comprise UMMS, including MGH, are related organizations through, for example, common membership, governing bodies, trustees and/or officers and benefit plans.

18.     Upon information and belief, at all times, the wage and hour and all related employee compensation policies of UMMS and the hospitals and health systems that comprise UMMS, including MGH, are and were centrally and collectively dictated, controlled, and ratified by Defendant UMMS.

19.     When Maryland General Hospital became part of UMMS several changes were made in the payroll system. First, employees including the Plaintiff were assigned new employee numbers so that they could be integrated into the centralized UMMS payroll system. The payroll function was also moved from Maryland General Hospital to UMMS and new identification badges were issued that contained the UMMS logo.

20.    Upon information and belief, UMMS and the hospitals and health systems that comprise UMMS, including MGH, share common management and have common ownership.

21.    As such, UMMS and MGH, are the employer – single, joint or otherwise – of the Plaintiff and class members.

22.    For purposes of this complaint, UMMS and MGH are hereinafter collectively referred to as "Defendants."

## FACTUAL BACKGROUND

23.    This action is filed on behalf of all non-exempt employees of Defendants employed at Maryland General Hospital, whose pay is subject to an automatic meal break deduction even when they perform compensable work during their meal breaks. These persons include, but are not limited to, secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse technicians, trainers, and transcriptionists employed at Maryland General Hospital any of Defendants' facilities during the three years preceding the filing of this action.

24.     The governing regulation provides that Defendants cannot shield themselves from a FLSA overtime claim simply by adopting policies that prohibit unreported overtime and that place on their employees the onus of recording their own overtime:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

25.     The employer who wishes no such work to be done has a duty to see it is not performed. The employer cannot accept the benefits of the work performed without including the extra hours in the employee's weekly total for purposes of overtime compensation. If the employer has the power and desire to prevent such work, the employer must make every effort to do so.

26.     Plaintiff completed the 11th grade at Carver High School, then obtained a GED before attending and completing the Baltimore City Adult Practical Nursing Program.

27.     Plaintiff became an LPN in 1983, and has worked in that capacity through the present. She has never lost her license, or otherwise been disciplined.

28.     Plaintiff worked at Maryland General Hospital as an LPN from January 20, 1992, through June 14, 2011. During this time she was assigned to a

General Surgical Unit referred to as "Unit 6 South" because it was located on the southern portion of the 6th Floor of the hospital.

29.     Maryland General Hospital originally used sign in sheets to track employee time. Under this system employees signed in and out each day. There was no requirement to sign in and out for meal breaks.

30.     For the last several years, the hospital has used a Kronos time system that required employees to swipe their identification badge when they started work and again when they ended work. The Kronos system was located in the 6th floor conference room and was only used twice a day, at the start of the day and at the finish.

31.     Plaintiff's normal work hours were 7:00 AM to 7:30 PM, three days each week, but on occasion she did work over forty hours. The work week ran from Sundays to Saturdays. Employees starting work at 7:00 AM were not allowed to clock in before 6:53 AM or to punch out earlier than 7:23 PM. Plaintiff and similarly situated employees were given two 15 minute breaks (compensated) and were supposed to be given a 30 minute meal break (uncompensated) for each shift. The employees did not clock out and in for any of these breaks.

32.     Plaintiff was paid for only 12 hours of each 12.5 hour shift she worked on the presumption that she was receiving a thirty minute meal break. Defendant Maryland General Hospital, Inc. supervised and controlled the Plaintiff's work schedule. Based upon information and belief, Defendants Maryland General Hospital, Inc. and University of Maryland Medical Systems set

Plaintiff's rate of pay, controlled the terms and conditions of Plaintiff's employment and maintained her employment records.

33.     Plaintiff and her co-workers rarely took a full 30 minute lunch break. Usually Plaintiff would go to the cafeteria, located in the basement, and pick up food to bring back to the unit and eat the meal while continuing to provide nursing service to the patients on the unit. The Plaintiff and the other nurses assigned to the unit generally took their 15 minute breaks on the unit, as well.

34.     Plaintiff's supervisors regularly observed Plaintiff and her co-workers working through their meal breaks and made no efforts to ensure that Plaintiff and her co-workers received full uninterrupted meal breaks.

35.     If nurses worked beyond 7:30 PM they were required to complete a Kronos adjustment sheet and provide an explanation for why they had to work beyond the conclusion of the scheduled shift. This happened often because it was difficult for the nurses to finish the medical treatment paperwork before 7:30 PM.

36.     To the best of her knowledge Plaintiff was not given the opportunity to complete a Kronos adjustment sheet when lunch breaks were not taken or when work was performed during the lunch breaks.

37.     To the best of her knowledge there was no ability for the Plaintiff to record the time she worked during the meal break or to cancel the automatic deduction of the 30 minute meal break from her time record. To the best of her knowledge Plaintiff was never advised that if she failed to take a lunch break or if she worked during the lunch break she could leave early or receive a Kronos

adjustment or extra pay. As a result, Defendants failed to accurately record the actual hours worked by the Plaintiff by including any work performed during the lunch break.

38.     Defendants had the ability to modify the Kronos system to allow for more accurate time keeping when it was in the Defendants' interest to do so. For example, the Kronos system was modified to include a "button" that was to be pushed if the employee was participating in continuing professional education and training classes. To Plaintiff's knowledge, the Kronos system was not modified, however, to provide a similar "button" that allowed the employees to cancel the automatic meal break deduction in situations when the employee missed a meal break.

39.     No instruction or training was provided to the Plaintiff about what steps could be taken if a meal break was missed. There was no requirement to notify the supervisor if a meal break was missed.

40.     The Plaintiff was never advised that she was required to take a meal break.

41.     Given the demands of the health care industry and staffing shortages, Defendants know that in order to accomplish the tasks they assign to Plaintiff and class members, Plaintiff and class members have to work through their unpaid "meal breaks."

42.     Under the Defendants' meal break deduction practice and policy, Defendants' computerized time and attendance system automatically deducts a 30 minute meal period per work shift.

43.     Upon information and belief, Defendant UMMS maintains the same meal break deduction practice and policy at all of its facilities. Accordingly, all non-exempt employees of Defendant UMMS are subjected to its policy and practice regarding "meal breaks."

44.     Under Defendants' practice and policy, Defendants improperly and illegally shift the burden to Plaintiff and class members to ensure that non-qualifying "meal breaks" are not deducted from their pay.

45.     Plaintiff and class members often perform compensable work for Defendants during their uncompensated "meal breaks."

46.     Defendants do not ensure that Plaintiff and the class members are completely relieved of their work duties during their uncompensated "meal breaks." As such, Plaintiff and class members are routinely not completely relieved of their job duties during their uncompensated "meal breaks."

47.     Plaintiff and class members routinely are required to stay at their duty post during their uncompensated "meal breaks."

48.     Defendants do not prohibit Plaintiff and class members from working during their "meal breaks" and routinely suffers or permits Plaintiff and class members to perform such work.

49.     Further, Defendants fail to ensure that unauthorized work is not being performed during employee "meal breaks."

50.     In fact, although Defendants automatically deducts 30 minute meal periods, Defendants expect Plaintiff and class members to be available to work throughout their shifts and consistently require its employees to work during unpaid "meal breaks."

51.     Plaintiff and class members are expected to eat without any change in demands from patients or relief by additional staff. Indeed, Plaintiff and class members are often required to respond to pages, as well as requests by patients, co-workers and management, during unpaid "meal breaks."

52.     Defendants know and/or have reason to believe that Plaintiff and class members perform work during their unpaid "meal breaks." Indicative of this, Plaintiff and class members perform work for Defendants, on Defendants' premises, in plain sight, and often at management's request (and at times in view of management) during their unpaid "meal breaks."

53.     Even though Defendants know that Plaintiff and class members are working during "meal breaks," Defendants fail to compensate Plaintiff and class members for their work, electing instead to accept the benefits of Plaintiff and class members' uncompensated work.

54.     In addition, Plaintiff and other class members regularly worked after their scheduled shift ended for no remuneration. Importantly, this work occurred after Plaintiff and class members time ceased being recorded for that day. Despite

this "off-the-clock" work, Defendants did not provide additional compensation to Plaintiff or other class members, nor did they take ameliorative measures to ensure that such "off-the-clock" work ceased occurring.

55.     Due to Defendants' aforementioned employment practices, including specifically wherein it automatically deducts thirty minutes for meal breaks from Plaintiff and class members' wages, Plaintiff and class members often worked without compensation, including, but not limited to, occasions when they worked in excess of forty hours per week and were denied statutory overtime wages. Plaintiff worked in excess of forty hours per week on occasion, including without limitation during the pay periods ending 4/17/2009; 7/18/2009 and 10/9/2010. Plaintiff worked through her meal breaks and was not compensated for this time. Additionally, Plaintiff was regularly scheduled to work three 12-hour shifts per week, without compensation for meal breaks and is entitled to overtime wages for all work weeks where she was paid for in excess of 38.5 hours because she would have worked in excess of 40 hours had she not had her time deducted for work she performed during her meal break. Plaintiff and her co-workers are entitled to overtime if they work more than forty hours per work week with the meal break time added back into the total hours worked.

56.     Evidence generally reflecting the number of uncompensated hours worked by each class member and the compensation rates for the relevant work periods is in the possession of Defendants.

57.     While Plaintiff is unable to state at this time the exact amount owed to the class, Plaintiff believes that such information will become available during the course of discovery. Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS/COLLECTIVE ACTION ALLEGATIONS

58.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

59.     Plaintiff brings this action on behalf of the Collective Action Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b), and on behalf of the MD State Law Class for claims under the Maryland Wage and Hour Law, ("MWHL"), Md. Code Ann., Labor & Employment, §3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, §3-501 *et seq.*; and Maryland common law, as a class action pursuant to Fed.R.Civ.P. 23.

60.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b). The claims under the MWHL, MWPCL, and Maryland common law may be pursued by all similarly-situated persons who do not opt-out of the MD Class pursuant to Fed.R.Civ.P. 23.

61.    The members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of the Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of individuals in each defined class.

62.    There are questions of law and fact common to the Classes which predominate over any questions affecting individual members only. These factual and legal questions include:

a.    Whether Plaintiff and class members were expected to and/or mandated to regularly work during unpaid meal breaks;

b.    Whether Defendants failed to pay Plaintiff and class members for all hours that they worked because of the fact that they automatically deducted 30 minute meal periods despite the fact that Plaintiff and class members regularly performed compensable work during "meal breaks";

c.    Whether Defendants failed to pay Plaintiff and class members all overtime compensation due to them by virtue of their meal break deduction practice and policy;

d.    The correct statute of limitations for Plaintiff's and class members' claims;

e.    The correct method of calculating back overtime pay;

f.    Whether Plaintiff and class members are entitled to compensatory damages, and if so, the means of measuring such damages;

g.    Whether Plaintiff and class members are entitled to restitution;

h.    Whether Defendants are liable for pre-judgment interest; and

       i.    Whether Defendants are liable for attorney's fees and costs.

63.    Defendants have acted and refused to act on grounds generally applicable to the Classes.

64.    The claims of the representative Plaintiff are typical of the claims of the Classes in that Plaintiff was denied wages as a result of Defendants' uniform policy of not compensating its non-exempt employees for all hours worked. This is the predominant issue which pertains to the claims of each and every class member.

65.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

66.    Furthermore, even if any member of the Classes could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Classes and provide for judicial consistency.

67.    Plaintiff will fairly and adequately protect the interests of the Classes, as her interests are in complete alignment with those of the entire class, i.e., to prove and then eradicate Defendants' illegal employment practice of not paying legally-mandated wages to its non-exempt employees.

68.    Counsel for Plaintiff will adequately protect the interests of the Classes. Such counsel is experienced with employment/class litigation and has previously served as class counsel in employment litigation.

69.    Plaintiff and the Classes she represents have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

70.    Defendants have engaged in a continuing violation of the FLSA.

71.    Plaintiff, as well as the individuals she represents, was denied legally-mandated wages as a result of Defendants' pay practices. This violation was intended by Defendants and was willfully done.

72.    Defendants' action in denying overtime wages to Plaintiff was intentional and constitutes a willful violation of the FLSA.

73.    Defendants have engaged in a continuing violation of the MWHL and the MWPCL.

74.    Defendants' action in denying wages for all hours worked was intentional and constitutes a willful violation of the MWPCL.

75.    Defendants' action in denying overtime wages to Plaintiff was intentional and constitutes a willful violation of the MWHL and the MWPCL.

## <u>COUNT I – FLSA</u>

76.   The allegations set forth in the preceding paragraphs are incorporated herein.

77.   At all relevant times, Defendants have been an employer engaged in interstate commerce consistent with 29 U.S.C. §§206(a) and 207(a). At all relevant times, Defendants employed Plaintiff and each member of the Collective Action Class consistent with the terms of the FLSA.

78.   At all relevant times, Defendants have had annual gross revenues in excess of $500,000.00.

79.   As a consequence of Defendants' employment practices whereby it automatically deducts thirty minutes for meal breaks from the pay of hourly, non-exempt employees, Plaintiff and class members were denied statutory overtime wages.

80.   Plaintiff and class members were employees of Defendants within the meaning of the FLSA and, as such, were entitled to the benefits of the FLSA's overtime wage requirements.

81.   Defendants' policy of denying Plaintiff and class members overtime wages represents and results in a violation of the FLSA's wage requirements.

82.   Defendants have failed to pay appropriate overtime wages under the FLSA.

WHEREFORE, Plaintiff respectfully requests:

A.   All applicable statutory damages;

18

B.      A Declaration that Defendants have violated the FLSA;

C.      An Order designating this action as a collective action and directing the issuance of notice pursuant to 29 U.S.C. §216(b);

D.      An Order appointing Plaintiff and her counsel to represent those individuals opting in to the collective action;

E.      An Order awarding counsel for Plaintiff reasonable attorneys' fees and costs; and

F.      Any further relief which the Court deems appropriate under the circumstances.

## COUNT II - MWHL

83.      The allegations set forth in the preceding paragraphs are incorporated herein.

84.      The MWHL provides in relevant part:

> Except as otherwise provided in this section, each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage, computed in accordance with § 3-420 of this subtitle.

Md. Code Ann., Labor & Employment, §3-415.

85.      Section 3-420 in turn provides:

> Except as otherwise provided in this section, an employer shall compute the wage for overtime under § 3-415 of this subtitle on the basis of each hour over 40 hours that an employee works during 1 workweek.

Md. Code Ann., Labor & Employment, §3-420.

86.      As a consequence of Defendants' employment practices whereby it

automatically deducts thirty minutes for meal breaks from the pay of hourly, non-exempt employees, Plaintiff and class members were denied statutory overtime wages.

87.    Plaintiff and class members were employees of Defendants within the meaning of the MWHL and, as such, were entitled to the benefits of the MWHL's overtime wage requirements.

88.    Defendants are an employer within the meaning of the MWHL.

89.    Defendants' policy of denying Plaintiff and class members overtime wages represents and results in a violation of the MWHL's wage requirements.

90.    Defendants have failed to pay appropriate overtime wages under the MWHL.

WHEREFORE, Plaintiff respectfully requests:

A.    That Defendants' conduct be declared to be in violation of the MWHL;

B.    That Plaintiff and class members are granted a permanent injunction enjoining Defendants, its officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates the MWHL;

C.    That Defendants be ordered to make whole those persons adversely affected by the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

D.      That Defendants be ordered to pay appropriate back pay to Plaintiff and class members;

E.      An Order designating this action as a class action;

F.      An Order appointing Plaintiff and her counsel to represent the MD State Law Class;

G.      Award counsel for Plaintiff reasonable attorneys' fees and costs; and

H.      Award any further relief which the Court deems appropriate under the circumstances.

## COUNT III - MWPCL

91.      The allegations set forth in the preceding paragraphs are fully incorporated herein.

92.      The MWPCL provides in relevant part:

> Each employer:
> (i)     Shall set regular pay periods; and
> (ii)    Except as provided in paragraph (2) of this subsection, shall pay each employee at least once in every 2 weeks or twice in each month.

Md. Code Ann., Labor & Employment, §3-502.

93.      Plaintiff and class members are/were employees of Defendant**s** within the meaning of the MWPCL and, as such, are entitled to timely payment of wages due to them. Plaintiff brings this claim only for failure to pay for non-overtime hours and not for overtime compensation required by the FLSA or state law.

94.      Defendants are each an employer within the meaning of the

MWPCL.

95.     Defendants' policy of subjecting Plaintiff's and class members' pay to automatic meal break deductions even when they performed compensable work results in a violation of the MWPCL because the Plaintiff and class members were not fully paid for the actual work, on a non-overtime basis, they performed during the meal breaks.

96.     Plaintiff and class members have entered into an unwritten agreement with Defendants pursuant to which Plaintiff and class members are to receive certain hourly wages, in compensation for their work for Defendants. In other words, Defendants have agreed to pay Plaintiff and class members for all of the time which they work.

97.     The members of the class are employees and former employees of the Defendants within the meaning of the MWPCL entitled to timely payment of wages due them.

98.     More than two weeks have elapsed from the date on which Defendants were required to have paid the wages owed to the Plaintiff and to the class members for all hours of work. Defendants have no bona fide reason for withholding the wages owed to the Plaintiff and to the class members for this uncompensated for time.

99.     Any consent or agreement by Plaintiff and the class whereby Plaintiff and the class agreed to forgo payment for the time they worked in excess of forty hours per workweek is unenforceable as contrary to public policy.

100.   Defendants' failure to pay wages for all time worked, as required by Maryland law, represents a violation of its oral agreement with Plaintiff and class members.

WHEREFORE, Plaintiff respectfully requests:

A.   That Defendants' conduct be declared to be in violation of the MWPCL;

B.   That Plaintiff and class members be granted a permanent injunction enjoining Defendants, their officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates the MWPCL;

C.   That Defendants be ordered to make whole those persons adversely affected by the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

D.   That Defendants be ordered to pay appropriate liquidated damages to Plaintiff and class members;

E.   An Order designating this action as a class action;

F.   An Order appointing Plaintiff and her counsel to represent the MD State Law Class;

G.   Award counsel for Plaintiff reasonable attorneys' fees and costs; and

H.   Award any further relief which the Court deems appropriate under the circumstances.

## COUNT IV – UNJUST ENRICHMENT / *QUANTUM MERUIT*

101.   The allegations set forth in the preceding paragraphs are fully incorporated herein.

102.   Plaintiff brings this Count IV in the alternative to her claim under the MWPCL for failure to pay for non-overtime hours and not for overtime compensation required by the FLSA or state law. Defendants' policy of subjecting Plaintiff's and class members' pay to automatic meal break deductions even when they performed compensable work results in the Plaintiff and class members not being fully paid for the actual work, on a non-overtime basis, they performed during the meal breaks.

103.   Any agreement or consent by the Plaintiff and the members of the class to work during their "meal breaks" is an illegal agreement in violation of the public policy of Maryland intended to protect employees from being denied payment for all hours worked. Any such agreement is unenforceable because it is illegal.

104.   Plaintiff and members of the class were not paid wages for all of the time they worked for Defendants.

105.   Plaintiff and members of the class conferred a benefit upon the Defendants by performing work for which they were not fully compensated.

106.   Defendants knew and appreciated that it was receiving the benefit of the uncompensated work performed by the Plaintiff and members of the class.

107.   Defendants retained the benefit of the uncompensated work

performed by the Plaintiff and members of the class under circumstances which render it inequitable and unjust for Defendants to retain such benefits without paying for their value.

108.   Defendants were unjustly enriched by requiring the Plaintiff, and other members of the class, to work without payment for all hours worked.

109.   Plaintiff and members of the class rendered valuable services to the Defendants.

110.   The services were accepted, used and enjoyed by the Defendants.

111.   The services were rendered under such circumstances that reasonably notified the Defendants that the Plaintiff and members of the class, in performing such services, expected to be paid by Defendants.

WHEREFORE, Plaintiff respectfully requests:

A.      That Defendants are declared to have been unjustly enriched;

B.      That Plaintiff and the class are declared to be entitled to the value, *quantum meruit*, of the services rendered by them to the Defendants;

C.      That Defendants be ordered to pay back to Plaintiff and the class the amounts representing its unjust enrichment and the value, *quantum meruit*, of the services rendered by them to the Defendants;

D.      An Order designating this action as a class action;

E.      An Order appointing Plaintiff and her counsel to represent the MD State Law Class;

F.      Award counsel for Plaintiff reasonable attorneys' fees and costs; and

G.      Award any further relief which the Court deems appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 26, 2012,            Respectfully Submitted,


*/s/ E. David Hoskins*
E. David Hoskins, Bar No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
dhoskins@hoskinslaw.com


*/s/ Gary F. Lynch*
Gary F. Lynch, Bar No. 29779
CARLSON LYNCH LLP
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
(724) 656-1555
glynch@carlsonlynch.com


*/s/ Gerald D. Wells*
Gerald D. Wells, III
FARUQI & FARUQI, LLP
101 Greenwood Avenue, Ste. 600
Jenkintown, Pennsylvania 19046