**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SANDRA T. QUICKLEY, individually, and**<br>**on behalf of all others similarly situated,**  )<br>)<br>)<br>**Plaintiff,**  )<br>)<br>**v.**  )<br>)<br>**UNIVERSITY OF MARYLAND MEDICAL**  )<br>**SYSTEM CORPORATION and**  )<br>**MARYLAND GENERAL HOSPITAL,**  )<br>)<br>**Defendants.**  )<br>) | **Civil Action No. 12-cv-321-CCB** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff, Sandra T. Quickley, has alleged a violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201 *et seq.,* as well as violations of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Employment, § 3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, § 3-501 *et seq.*; and Maryland common law. Her claims arise out of Defendants' uniform and common policy of automatically deducting a thirty (30) minute "meal break" from the work time of every hourly employee, each work shift, without regard to whether such employee actually receives a full, uninterrupted meal break, as is necessary for such meal break to be non-compensable under federal and state law. Plaintiff brings her FLSA claim as a collective action, pursuant to Section 216(b) of the FLSA, and her state law claims as a class action, pursuant to Fed. R. Civ. P. 23.

Defendant has filed a partial motion to dismiss, claiming that: 1) Plaintiff has not

adequately alleged she was employed by Defendant University of Maryland Medical System Corporation ("UMMS"); 2) Plaintiff has not adequately alleged the basis for collective/class action treatment; 3) Defendants' meal break practice, as alleged by Plaintiff, cannot support a collective/class action as a matter of law; and 4) Plaintiff's claim for unjust enrichment/*quantum meruit*, brought in the alternative to Plaintiff's claim under the MWPCL, is preempted by the FLSA and/or must be dismissed because Plaintiff has not alleged she was "wrongfully terminated in breach of an employment contract."

Each of Defendants' arguments is without merit. Plaintiff has adequately alleged, at a minimum, a "plausible" basis for relief and should be permitted to proceed with discovery regarding her claims. As shown in more detail herein:

> 1)    Plaintiff supported her allegation that she and the putative collective/class members were employed by UMMS by specifically alleging that: a) UMMS centrally created the meal break practice at issue and implemented such practice through a common payroll system, applicable to employees at each of the UMMS hospital facilities, including Defendant Maryland General Hospital ("MGH"), where Plaintiff and the collective/class members worked (FAC ¶¶ 12-21,43); and b) UMMS, through or in conjunction with MGH, set Plaintiff's rate of pay, controlled the terms and conditions of Plaintiff's employment and maintained her employment records (FAC ¶ 32);

> 2)    Plaintiff supported her allegation that this case should proceed as a collective/class action by specifically alleging that the challenged meal break practice to which she was subjected was applied to all other hourly employees at MGH and that such employees were under-compensated as a result of Defendants' common pay practice (FAC 23, 27-54);

> 3)    Defendants' meal break practice, which, as plaintiff has alleged, automatically deducts work time from Defendants' hourly employees without regard to whether they actually receive a meal break which properly can be regarded as non-compensable under the law, violates: a)

the FLSA and the MWHL[1] because it results in employees not receiving appropriate overtime compensation; and b) the MWPCL and/or Maryland's common law of unjust enrichment because it results in either a breach of Defendants' contractual obligation to pay their employees for all time worked, and/or an unfair benefit for Defendants at the expense of Defendants' hourly employees. Additionally, Defendant's meal break practice, on its face, constitutes an illegal deduction from wages pursuant to Section 3-503 of the MWPCL. Allegations of meal break practices nearly identical to that of Defendants routinely have been held to establish a legitimate cause of action and to support collective/class action treatment. *See Demarco v. Northwestern Memorial Healthcare,* 2011 WL 3510896, at *4 (N.D. Ill. August 10, 2011)("The governing regulation provides that [Defendant] cannot shield itself from an FLSA (and thus [a state law]) overtime claim simply by adopting policies that prohibit unreported overtime and that place on [plaintiff] the onus of recording her own overtime . . . .); *Creely v. HCR Manorcare,* 789 F. Supp. 2d 819 (N.D. Ohio June 9, 2011)(granting conditional certification under the FLSA for meal break deduction claim);

4)      Plaintiff's claim for common law unjust enrichment/*quantum meruit* (pled in the alternative to her MWPCL claim) is not preempted by the FLSA because Plaintiff expressly alleges that her MWPCL and unjust enrichment/*quantum meruit* claims are limited to <u>non-overtime</u> unpaid wages and do not pertain to overtime compensation which might be due under the FLSA, or the MWHL. (FAC ¶¶ 93, 102). Further, Plaintiff need not have been "wrongfully terminated" to recover under an unjust enrichment/*quantum meruit* theory.

Accordingly, Defendants' partial motion to dismiss should be denied and Defendants should be ordered to file an answer to the First Amended Complaint, so that Plaintiff may proceed with discovery on her claims.

---

[1]      The MWHL is the Maryland statutory analog to the FLSA and, accordingly, for purposes of responding to Defendants' challenge to the First Amended Complaint, Plaintiff will refer to the requirements of the two statutes interchangeably. *See Turner v. Human Genome Science, Inc.,* 292 F. Supp. 2d 738 (D. Md. 2003) ("The requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA.").

## I.    THE FIRST AMENDED COMPLAINT

UMMS owns and operates a system of health care facilities in the geographic area surrounding Baltimore, Maryland (FAC ¶¶ 12-14). One of UMMS' hospital facilities is MGH. (FAC ¶ 16). In total, UMMS has 15,000 employees, provides 2,300 beds and admits 115,000 patients annually. (FAC ¶ 13). All of the wage and hour and related employee compensation policies in place at the hospital facilities within the UMMS health care system, including the policies applicable at MGH, are "centrally and collectively dictated, controlled, and ratified by UMMS." (FAC ¶ 18). Similarly, the payroll system in place at MGH, and all other UMMS facilities, is centrally overseen, maintained and implemented by UMMS. (FAC ¶ 19).

 Plaintiff became a Licensed Practical Nurse ("LPN") in 1983 and has consistently worked in such capacity since that time. (FAC ¶ 27). From January 20, 1992, through June 14, 2011, Plaintiff worked in a general surgical unit at MGH, one of UMMS' hospital facilities. (FAC ¶ 28). For the last several years, UMMS has used a Kronos timekeeping system that requires employees to swipe their identification badge when they begin and end their shift. (FAC ¶ 30). Plaintiff's normal work shift was from 7:00 AM to 7:30 PM, three days each week, but on occasion, she did work over forty hours in a week, making her eligible for overtime. (FAC ¶ 31).

Although she clocked in for and worked 12.5 hours each shift, Plaintiff was only compensated for 12 hours. (FAC ¶ 32)  This one half hour shortfall each shift resulted from Defendants' policy of automatically deducted 30 minutes of work time from each hourly employee on the presumption that plaintiff (and all other hourly employees) were taking an uncompensated meal break within the meaning of federal and state law.

(FAC ¶¶ 31-32, 42). However, Plaintiff and her coworkers rarely received a full, uninterrupted, thirty minute meal break, as required for such break to be non-compensable under the law. (FAC ¶¶ 33, 41, 45-47, 50-51). Defendants were aware that Plaintiff and the other hourly employees subjected to the automatic thirty minute deduction were not receiving an appropriate meal break because Defendants' supervisors regularly observed Plaintiff and the other employees working through their meal breaks. (FAC ¶¶ 34, 52-53).

Defendants did not readily provide any mechanism whereby employees could "cancel" the automatic meal break deduction and, in any event, did not provide any explanation to Plaintiff and the other hourly employees on what constituted a non-compensable meal break within the meaning of the law. (FAC ¶¶ 36-39). Although Defendants automatically deducted 30 minutes of work time each shift from their hourly employees, Defendants took no steps to ensure that an appropriately non-compensable meal break was received by each employee and/or that each employee was otherwise appropriately compensated for all time worked. (FAC ¶¶ 40, 44, 46, 48, 49). Defendants' meal break practice is the same throughout MGH and the other UMMS hospital facilities. (FAC ¶ 43).

## II.   ARGUMENT

### A.   The Legal Standard for a Motion to Dismiss

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006) (internal quotation marks and alterations omitted). As the moving party, the Defendants bears

the burden of persuading the court that the plaintiff has failed to state a claim. *See, e.g., DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Gonzalez v. Napolitano*, 2010 WL 149829, *2 (D.N.J. Jan. 15, 2010). The defendant's burden is a "heavy" one -- much heavier than on a motion for summary judgment. *See, e.g., Stein v. Smith*, 270 F. Supp. 2d 157, 164 (D. Mass. 2003).

A motion to dismiss may not be granted in the factual allegations of a complaint are "enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is only to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted).

Additionally the facts alleged in the complaint must be construed in the light most favorable to the plaintiff, and all reasonable inferences must be drawn in the plaintiff's favor. *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (holding, post-*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), that a district court erred by "ignor[ing] reasonable inferences supported by the facts alleged" and by drawing "inference in [defendants'] favor"). Additionally, on a motion to dismiss, courts must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994); *see also Capps v. U.S. Bank Nat'l Ass'n*, 2009 WL 5149135, *1 (D. Or. Dec. 28, 2009) (re-stating this rule after *Iqbal*). Federal Rule of Civil Procedure 11 also specifically contemplates and permits allegations made on information and belief. *See*

Fed. R. Civ. Proc. 11(b)(3) & Advisory Committee Notes to the 1993 Amendments.

To the extent that the Supreme Court suggested that "conclusory" allegations need not be taken as true, it closely limited its holding to allegations that simply mirror the elements of a cause of action without any further factual amplification. *See, e.g., Iqbal*, 129 S. Ct. at 1951; *see also Chao*, 630 F. Supp. 2d at 177. Every complaint includes at least some conclusory language because all complaints -- by necessity -- recite the legal elements of the plaintiff's claims. Neither *Twombly* nor *Iqbal* provides any support for an argument that a complaint may be dismissed simply because it includes some conclusory statements. Instead, both cases make clear that in order to justify dismissal, a defendant must satisfy *Twombly* and *Iqbal*'s second step by showing that the plaintiff's claim is so far-fetched as to be implausible. *See, e.g., Iqbal*, 129 S. Ct. at 1951 (holding that the plaintiff's complaint should have been dismissed because it was implausible, not because it contained conclusory allegations); *Twombly*, 550 U.S. at 564–69 (same).

The Supreme Court's adoption of "plausibility" pleading did not impose a radical new regime on lower courts. A plaintiff need not show that his theory of liability is more likely to be true than an alternative explanation offered by the defendant or imagined by the court. To impose such a requirement would create a preponderance standard at the pleading stage, which the Supreme Court explicitly rejected. *Twombly*, 550 U.S. at 556 (plausibility is not a "probability requirement," and the defendant cannot prevail even by showing that the plaintiff is unlikely to succeed, that his claims are "improbable," or that recovery is "very remote").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To be entitled to a dismissal based upon implausibility, the defendant must show that there is an alternative explanation that is much more obvious and plausible than the plaintiffs. *See Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009).

A court may not dismiss a complaint because it disbelieves the plaintiff's factual allegations. *See Twombly*, 550 U.S. at 556. In fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

Thus, notice pleading remains the rule, *see, e.g., Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009), and the principal purpose of Rule 8 is to provide adequate notice to the defendant so that he or she may prepare an answer. *See, e.g., Connolly v. Smugglers' Notch Mgmt. Co.*, 2009 WL 3734123, *3 (D. Vt. Nov. 5, 2009) (complaint met the "specificity standard" where it "put the defendant on notice of the charges against it"). Neither *Twombly* nor *Iqbal* imposed a heightened fact-pleading regime. *See, e.g., Smith v. U.S.*, 561 F.3d 1090, 1103 (10th Cir. 2009) ("heightened fact pleading" was "expressly rejected"). As explained in *Hinterberger v. Catholic Health*, 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008) amended, 08-CV-380S, 2009 WL 4042718 (W.D.N.Y. Nov. 19, 2009), "Rule 8 of the Federal Rules of Civil Procedure does not require heightened fact pleading, but merely requires the plaintiff to 'give the defendant fair notice of [plaintiff's] claim and the grounds upon which it rests.'" *Id.* at *2, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167

L.Ed.2d 929 (2007).

The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Sanofi-Aventis Sec. Litig*., 774 F. Supp. 2d 549, 559 (S.D.N.Y. 2011), quoting *In re Initial Pub. Offering Sec. Litig*., 383 F. Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

### B.   Plaintiff Has Sufficiently Alleged an Employer-Employee Relationship with UMMS

While Defendants argue in their partial motion to dismiss that this Court's evaluation of whether Plaintiff has sufficiently pled an employer-employee relationship with UMMS requires an immediate review of the factors discussed by Judge Motz in his summary judgment opinion in *Jacobson v. Compcast Corp*., 740 F. Supp. 2d 683 (D. Md. 2010)( citing *Bonnette v. Cal. Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir. 1983) and *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2nd Cir. 2003)), this is an oversimplification of the process. In *Zheng,* the Second Circuit noted that:

> [T]he inquiry as to whether an entity is an employer for purposes of the FLSA involves three types of determinations. First, there are historical findings of fact that underlie each of the relevant factors. Second there are findings as to the existence and degree of each factor. Finally, there is the conclusion of law to be drawn from applying the factors . . . .

*Zheng,* 355 F.3d at 76. Because Defendants are contesting UMMS' employer status at the motion to dismiss stage, without discovery having been conducted, this Court cannot possibly perform the first two stages of inquiry discussed in *Zheng*.  Accordingly, as an initial proposition, a determination of UMMS' employer status is premature at this stage of the litigation.

In the context of a motion to dismiss, Plaintiff is not required to conclusively prove Defendants' employer status. That is, on a motion to dismiss, a court "need only examine whether allegations of relevant facts are sufficient to state an employment or joint employment relationship under the FLSA." *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 329 (D. N.J. 2005).[2] As this Court has observed, "[f]ederal courts have widely held that the definition of 'employer' under the FLSA 'is to be interpreted broadly to achieve Congress's intent to provide a remedy to employees for their employers' wage and hour violations.'" *Hurd v. NDL, Inc.,* 2012 WL 642425 (D. Md. February 27, 2012) (quoting *Gionfriddo v. Jason Zink, LLC,* 769 F. Supp. 2d 880, 890 (D. Md. 2011)).

In *Hurd,* this Court, explaining that the determination of whether an entity is an employer under the FLSA "turns on the 'economic reality' of the relationship between the employee and the putative employer," denied a motion to dismiss several individual defendants, concluding that *Iqbal's* plausibility standard had been met by plaintiff's allegations that the individuals had a financial interest in the corporate defendant, had authority to hire and fire employees, and conceived and implemented the pay practices that governed plaintiff's employment. *Hurd*, 2012 WL 642425 at * 5 (citing *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). In reaching its decision, this Court noted that "[t]he determination of an employment relationship 'does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Hurd*, 2012 WL 642425 at *5 (quoting *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730

---

[2]     Moreover, prior to discovery, Defendants should not be heard to assert their own self-serving conclusion that UMMS is not plaintiff's employer, particularly given the broad definition. *See* 29 U.S.C. §§ 203(d), 203(g); *Walling v. Portland Terminal Co.,* 330 U.S. 148, 150-51 (1947); *Nationwide Mut. Ins. Co., v. Darden,* 503 U.S. 318, 326 (1992); *Falk v. Brennan,* U.S. 190, 195 (1973).

(1947).

Plaintiff's allegations in this case are substantially the same as the allegations in *Hurd.* Here, Plaintiff has alleged that UMMS and MGH are related organizations with common ownership and governance. (FAC ¶¶ 12-17). Additionally, Plaintiff has alleged that the employment and payroll practices at issue in this case were created and implemented by UMMS. (FAC ¶¶ 12-21, 32, 43). Accordingly, for the same reasons discussed by this Court in *Hurd,* Plaintiff has alleged facts which plausibly establish that UMMS is Plaintiff's employer. Defendants' partial motion to dismiss the claims against Defendant UMMS should therefore be denied.

### C.     Plaintiff Has Sufficiently Alleged that this Case is Suitable for Collective/Class Action Treatment

Defendants argue that Plaintiff has not sufficiently alleged that this case is suitable for collective/class treatment. Accepting as true Plaintiff's factual allegations regarding Defendants' automatic meal break deduction practice, however, it is clear, especially under a "plausibility" standard of pleading, that Plaintiff has sufficiently pled an adequate basis for collective/class treatment. In her First Amended Complaint, plaintiff alleges: 1) Defendants implemented a policy and practice of automatically deducting a thirty minute meal break from the total work time of all hourly employees for each shift worked, regardless of whether the employees performed compensable work during this unpaid break; 2) In contravention of the FLSA's fundamental requirement that overtime compensation be based upon all time an employee is "suffered or permitted" to work, Defendants, as a matter of corporate-wide policy, inappropriately shifted the burden of monitoring compensable work time to the

individual employees, by forcing such employees to attempt to somehow "cancel" the automatic meal break deduction in every instance when they did not receive a full, uninterrupted meal break; 3) Plaintiff and the other hourly employees were, as a matter of corporate-wide policy, not informed as to what constitutes a "full, uninterrupted meal break" within the meaning of the law, but rather left to make their own subjective determination as to what level of interruption might make the meal break compensable under the law; and 4) Defendants, as a matter of corporate-wide policy, have not implemented any system (other than reliance upon the hourly employees' own subjective determinations) to monitor when their hourly employees do not receive a "full, uninterrupted meal break" – regardless of the fact that all meal breaks are automatically deducted from the employees' total recorded work time. (FAC ¶¶ 23, 27-54).

As alleged, this case involves standardized policies and practices of the Defendants that are applicable to all hourly employees, regardless of their job title, the department in which they worked, the facility in which they worked and the geographic location at which they worked. Accordingly, this action is archetypically appropriate for

collective/class treatment.[3]   Indeed, numerous courts have found conditional certification under Section 216(b) of the FLSA appropriate on facts indistinguishable from this case. *See, e.g., DeMarco v. Northwestern Memorial Healthcare,* 2011 WL 3510905 (N.D. Ill. 2011).[4]

In *DeMarco*, one individual plaintiff brought suit under the FLSA, alleging that she and other similarly-situated nurses were denied overtime compensation as a result of defendant's policy of automatically deducting meal break time, without monitoring whether the employee actually received a full, uninterrupted meal break. In granting

---

[3]    *See, e.g., Frank v. Gold'n Plump Poultry, Inc.*, 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005) (rejecting defendant's argument that notice should not be issued because plaintiffs worked at different geographic locations in different areas, reported to different supervisors who had autonomous decision-making authority, held different positions and worked different hours); *Pivonka v. Bd. of County Comm'rs*, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (FLSA notice granted to paramedics, lieutenants and captains classified as non-exempt employees); *Donohue v. Francis Servs., Inc.*, 2004 WL 1161366, at *3 (E.D. La. May 24, 2004) (rejecting defendant's argument that class definition was "problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement"); *Robinson v. Eastman Kodak Co.*, 2003 WL 24183368, at *4 (W.D.N.Y. Apr. 9, 2003)(granting FLSA certification to class of hourly employees).

[4]    *See also, Creely v. HCR Manorcare,* 789 F. Supp. 2d 819 (N.D. Ohio June 9, 2011); *Cook v. St. John's Health, et al., No.* 10-10016 (E.D. Mich. March 3, 2011); *Miller v. Jackson, Tennessee Hospital Co., LLC,* 2011 WL 1060737 (M.D. Tenn. March 21, 2011); *Carter v. Jackson-Madison County Hospital,* 2011 WL 1256625 (W.D. Tenn. March 31, 2011); *Lindberg v. UHS of Lakeside, LLC,* 761  F. Supp. 2d 752  (W.D. Tenn. January 21, 2011); *Taylor v. Pittsburgh Mercy Health Sys.*, No. 09-377, 2009 U.S. Dist. LEXIS 57328 (W.D. Pa. July 7, 2009); *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 U.S. Dist. LEXIS 107139 (W.D. Tenn. Sept. 16, 2008); *Camesi v. UPMC,* 2009 U.S. Dist. LEXIS 40571 (W.D. Pa. May 14, 2009); *Kuznyetsov v. West Penn Allegheny Health System,* 2009 WL 1515175 (W.D. Pa. 2009);   *Hinterberger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 21, 2009); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200 (N.D.N.Y. 2009); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009); *Ohsann v. L. V. Stabler Hosp.*, No. 2:07-cv-0875-WKW, 2008 U.S. Dist. LEXIS 47074 (M.D. Ala. June 17, 2008).

conditional certification, the district court concluded that plaintiff had "adduced evidence sufficient to permit a reasonable fact-finder to conclude that [defendant's] overtime practices violate FLSA's overtime requirements." *Demarco,* 2011 WL 3510905 at *3.[5]

This case is nearly identical to *DeMarco*. Here, as in *DeMarco*, the employer is alleged to have a policy and practice of automatically deducting meal break time without either ensuring that such meal breaks are provided or that otherwise the employee is compensated for the time. As the court found in *DeMarco*, the allegation of this common occurrence is sufficient to justify collective action treatment for the affected employee group.

Similarly, in *Creely,* the district court also granted conditional certification of an FLSA automatic meal break overtime claim. The defendant in *Creely* was a nursing home chain. Like here, plaintiffs' claim was based upon the failure of the defendant to monitor whether employees received their full, uninterrupted meal breaks in instances when the time for such meal break was automatically deducted from the employees' work time. *Creely,* 789 F. Supp. 2d at 820. Also as here, the defendants in *Creely* left it for the employees to decide for themselves whether a particular meal break had been missed or interrupted in such a way as to make the time compensable within the meaning of the law. *Creely,* 789 F. Supp. 2d at 834. ("[Defendant] deliberately chose not to provide specific training regarding an "uninterrupted meal break," preferring instead to let hourly employees decide for themselves whether they had received an

---

[5]     *See also Cook v. St. John's Health, et al., No.* 10-10016 (E.D. Mich. March 3, 2011)(Single Plaintiff granted conditional certification).

uninterrupted meal break.").

In granting conditional certification, the court in *Creely* relied, to a significant extent, upon the impropriety of defendants' conduct in letting employees' define for themselves what constituted an "uninterrupted meal break:"

> [Defendant's] approach . . . is not supported by the plain language of the Department of Labor Fact Sheet on auto-deduct policies or the federal regulations under the FLSA. Both are explicit in requiring an uninterrupted meal break period, not a flexible standard to be determined at will by an employer or an employee. *See* Dep't of Labor, Fact Sheet No. 53, at 3 ("[T]he employees must be completely relieved from duty."); 29 C.F.R. § 785.19(a) ("The employee must be completely relieved from duty for the purposes of eating regular meals . . . The employee is not relieved if he is required  to perform any duties, whether active or inactive, while eating."). [Defendants' witness'] statements that [Defendant] intentionally refused to train employees on what constituted an uninterrupted meal break, and that such refusal was undertaken with respect to the entire hourly employee population subject to the auto-deduct policy, sufficiently supports and advances Plaintiffs' allegations on this point.

*Creely,* 789 F. Supp. 2d at 834.

The present case, as alleged, is nearly identical to *Creely*. As in *Creely,* Defendants' automatic meal break deduction, coupled with their intentional failure to monitor whether hourly employees worked during such time periods, thereby shifting the burden to the employees to determine for themselves when their meal break is compensable, provides a sufficient nexus between Plaintiff's claim and the claims of the proposed notice recipients, certainly at the pleading stage of this litigation.

### D.   Defendants' Meal Break Deduction Policy Does Not Comply with the Law

Defendants argue that their meal break practice cannot be the basis for a collective/class action because it does not violate the law. Plaintiff disagrees.

Simply stated, Defendants' meal break deduction practice violates the FLSA and

the MWHL because, as alleged by Plaintiff, Defendants did not "ensure" that employees actually stopped working during their meal breaks, in each instance when an automatic meal break deduction occurred. If an employer's policy permits its employees to work through their meal period – and certainly if it knows and encourages them to do so – it is simply improper for the employer to automatically deduct a "meal period" from each employees' work time records. The obvious result is that employees are not paid for the time they work.

The FLSA requires an employer to pay its covered employees at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). Under the FLSA, all time which employees are "suffer[ed] or permit[ted]" to work must be compensated. 29 U.S.C. § 203(g)("employ" includes "to suffer or permit to work"). Recognizing the remedial purpose of the statute, the Supreme Court has interpreted the FLSA very broadly, noting that "[a] broader or more comprehensive coverage of employees...would be difficult to frame." *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ("While the FLSA, like ERISA, defines an 'employee' to include 'any individual employed by an employer,' it defines the verb 'employ' expansively to mean 'suffer or permit to work.'"); *Zheng*, 355 F.3d at 66, 69 (citing *Rosenwasser*, 323 U.S. at 363, n. 3 ("FLSA...defines 'employ' as including 'to suffer or permit to work.'" "This is 'the broadest definition [of 'employ'] that has ever been included in any one act.'")).

The "suffer or permit" concept is essential to the effective implementation of the FLSA, which, by definition, seeks to impose a wage standard beyond that which would result from an otherwise unregulated market for labor. *Tony & Susan Alamo Found. V.*

*Sec'y of Labor*, 471 U.S. 290, 302 (1985)("[T]he purposes of the Act require that it be applied even to those who would decline its protections.").

As the United States Department of Labor ("DOL") regulations make clear, even work not specifically requested by the employer is compensable. 29 C.F.R. § 785.11 (2011)("Work not requested but suffered or permitted is work time . . . The reason is immaterial. The employer knows or has reason to believe that [the employer] is continuing to work and the time is working time."). As such, "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. Accordingly, employers must pay overtime compensation when they either have actual knowledge that overtime work is being performed or have the opportunity through reasonable diligence to acquire such knowledge. *Cunningham v. Gibson Elec. Co.*, 43 F.Supp.2d 965, 975 (N.D. Ill. 1999); *see also, Newton v. City of Henderson*, 47 F.3d 746, 748 (5ᵗʰ Cir. 1995)(*citing Davis v. Food Lion*, 792 F.2d 1274, 1276 (4ᵗʰ Cir. 1986)); *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781 (8ᵗʰ Cir. 2009)(employer is liable for overtime if it "knew or should have known that [its employees] were working overtime."). "The cases must be rare where prohibited work can be done and knowledge or consequences of knowledge avoided."   *Reich v. Dept. of Conservation & Natural Res.*, 28 F.3d 1076, 1082 (11ᵗʰ Cir. 1994).

The DOL has issued particular guidance directed to health care employers on the issue of meal break deductions. *See* Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2008). The DOL instructs healthcare employers who choose to automatically deduct thirty minutes per shift that they must ensure that the employees are receiving their full, uninterrupted

meal break. *See Id.*; 29 C.F.R. § 785.19. The failure to "ensure" that employees receive a full, uninterrupted meal break when automatically deducting time for such meal break results in a violation of the FLSA.

In an Opinion Letter dated May 14, 2007, the DOL indicated that, because the FLSA and its implementing regulations do not prescribe any particular method of recording employee hours, the practice of automatically deducting time for an employee's meal break is permissible "**so long as the employer accurately records** actual hours worked, including any work performed during the lunch period." *U.S. Dep't of Labor Opinion Letter*, FLSA 2007-1NA, May 14, 2007 (emphasis added).

While it might be possible for some types of employers to "ensure" a full, uninterrupted meal break by actually stopping all work while employees take their automatically-deducted meal break, this is simply not the case in the health care industry. UMMS' hospitals never "shut down." As a consequence, and as alleged by Plaintiff, Defendants expected, and knew, that their employees were performing work during their meal breaks. As plaintiff has alleged in her First Amended Complaint, she and other employees routinely worked through their meal break, all within the obvious knowledge of Defendants. (FAC ¶¶ 34, 52-53). Because Defendants imposed the automatic meal break deduction upon hourly employees, without ensuring that their meal breaks were actually taken on a full, uninterrupted basis, Defendants' meal break deduction policy violated the law.

Defendants argue that their automatic meal break deduction policy does not violate the law because "[t]he FLSA does not require that an employee receive a meal break" and Defendants are not prohibited from "requiring employees to report the time

they work." *See* Defendants' Memorandum at pp. 18-19. These arguments, however, completely miss the point. Under the FLSA, employers cannot place the burden upon employees to make sure all of their work time is paid. Indeed, the DOL has explicitly stated that an employer must pay for time an employee works at a health care facility during a meal break, *even when the employee fails to record such time as required by the employer's policy*:

> Q1:   If an employee fails to take a meal break and does not notify the manager that he did so in direct violation of the policy, is additional ... compensation due...?
>
> A1:  Work not requested but suffered or permitted is work time. 29 C.F.R. § 785.11. Thus, the employer must compensate the employee for all hours worked including the time worked during the missed meal period.

*U.S. Dep't of Labor Opinion Letter*, FLSA 2008-7NA, May 15, 2008.

This rule is entirely consistent with the statutory and regulatory language requiring payment for any time an employee is "permitted" to work, as opposed to the payment obligation being limited to only "recorded" work time. Any other approach would create an opportunity for employers to intimidate their employees into working without compensation, something that the FLSA was explicitly crafted to avoid. Under the "suffer or permit" standard, Defendants are obligated to monitor their employees to keep track, not only of the time which the employees are required to work, but also of the time they are permitted to work.

By leaving it to each hourly employee to report when their automatically-deducted meal break was interrupted or missed, as Plaintiff has alleged, Defendants systematically failed to compensate their employees for all time they were "suffered or permitted" to work. Asking the employee to bear the burden of deciding when it is

appropriate to reverse the automatic meal break deduction completely undermines the concept of "permit to work." The whole premise of the FLSA is that workers are to be protected from their own willingness to work under circumstances that fall below the standards set by law. In arguing that their meal break policy is not illegal, Defendants completely disregard this fundamental premise. The issue presented in this case is whether or not Defendants' common policy "ensured" that the employees did not work during their meal break, or were otherwise compensated when they did work during their meal break, in every instance when Defendants' chose to rely upon their automatic meal break deduction. Contrary to Defendants' assertions, this issue links the claims of Plaintiff and the prospective class and, certainly under the *Iqbal* "plausibility" standard, is sufficient to establish a claim collective/class treatment.[6]

Defendants claim there is an "increasingly large body of law" supporting the notion that "the implementation and use of an automatic meal break deduction does not violate the FLSA." *See* Defendants' memorandum, p. 15. However, as the cases cited herein demonstrate, in addressing the merits at summary judgment and during the conditional certification process, courts have concluded that an automatic meal break

---

[6]     Although Defendants' do not appear to challenge the sufficiency of Plaintiff's allegation that her MWPCL and, alternatively, unjust enrichment/*quantum meruit* claims are entitled to class action treatment, Plaintiff notes that she is pursuing two separate theories of liability under the MWPCL, both of which are suitable for class treatment. First, Plaintiff has alleged that Defendants have breached their clear understanding with their employees to pay them for all time they work, in violation of Section 3-505 of the MWPCL. (FAC ¶ 96). Second, based upon Plaintiff's allegations regarding Defendants' automatic meal break deduction policy, Plaintiff contends that Defendants are systematically violating Section 3-503 of the MWPCL, which prohibits deductions from the wages of any employee unless certain perquisites are met. *See Marroquin v. Canales*, 505 F. Supp. 2d 283, 292-293 (D. Md. 2007)(Blake, J.)(holding that defendant violated Section 5-503 by taking offset against wages for food and lodging).

deduction practice which leaves it entirely to the employee to attempt to reclaim the automatically deducted time, without any attempt by defendant to monitor and ensure that the meal break is actually provided or the time otherwise compensated, violates the FLSA. *See Demarco v. Northwestern Memorial Healthcare,* 2011 WL 3510896 (N.D. Ill. August 10, 2011).

In *Demarco,* the district court denied defendants' request for summary judgment regarding a hospital automatic meal break deduction practice which is nearly identical to the practice alleged by Plaintiff in her First Amended Complaint, concluding:

> [Defendant] responds that it cannot have had actual or constructive knowledge of DeMarco's off-the-clock work because DeMarco was instructed to not work off-the-clock, was further instructed to take breaks, was fully capable of pressing the "cancel lunch" button when unable to take an uninterrupted meal break, and did not object to her time sheets after reviewing them. [Defendant] essentially asks: If a large employer allows its employees to record their own time, how can it be liable for failing to pay overtime when a particular employee did not record all the time she worked? And if DeMarco did not record all of her work time, isn't that her fault rather than [Defendant's]? The law answers those questions in DeMarco's favor. The governing regulation provides that [Defendant] cannot shield itself from an FLSA (and thus an IMWL) overtime claim simply by adopting policies that prohibit unreported overtime and that place on DeMarco the onus of recording her own overtime . . . .

*Demarco,* 2011 WL 3510896 at *4.

### E. Plaintiff has Sufficiently Alleged an Alternative Claim for Unjust Enrichment/*Quantum Meruit* and Such Claim is not Preempted by the FLSA

The FLSA does not preempt Plaintiff's claim for unjust enrichment/*quantum meruit.* Indeed, the statute contains a "savings clause" that expressly contemplates the application of state law to provide workers with more protection that that provided by the FLSA itself. *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order

thereunder shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . . ."); *see also Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 (2d Cir. 1986) ("Section 218(a) of the FLSA explicitly permits states to set more stringent overtime provisions than the FLSA.") (internal citation omitted); *Butler v. DirectSat USA, LLC.*, 800 F. Supp. 2d 662, 672 (D. Md. 2011) ("While courts have held that state laws cannot enlarge the available remedy for FLSA violations, there is nothing in FLSA preventing states from creating a parallel regulatory scheme that provides additional protections for employees.").

In arguing that the FLSA preempts Plaintiff's unjust enrichment/*quantum meruit* claim, Defendants rely upon the Fourth Circuit's decision in *Anderson v. Sara Lee Corp.,* 508 F.3d 181 (4th Cir. 2007). In *Anderson,* the Fourth Circuit held that, under a conflict preemption theory, state common law claims that rely on an alleged violation of the FLSA[7] are preempted because the FLSA "provides exclusive remedies for the enforcement of its own provisions . . . ." *Anderson,* 508 F.3d at 193-194.

In this case, and in contrast to *Anderson,* Plaintiff is not relying upon Defendants' violation of the FLSA as the basis for her unjust enrichment/*quantum meruit* claim. Indeed, Plaintiff expressly limits her common law claim for "non-overtime hours and not for overtime compensation required by the FLSA or state law." (FAC ¶ 102). Given

---

[7]    As the Fourth Circuit explained: "The Class Members do not contend, however, that any North Carolina law entitles them to unpaid wages. Rather , as discussed above, they rely on the FLSA for their rights, and they invoke state law only as the source of remedies for the alleged FLSA violations."  *Anderson,* 508 F.3d at 193.

Plaintiff's clear limitation of her claim, there is no overlap with the FLSA and, accordingly, no conflict preemption.

Defendants also argue that Plaintiff's unjust enrichment/*quantum meruit* claim must be dismissed because Plaintiff has not pled that she was "wrongfully terminated." *See* Defendants' Memorandum, p. 21. Contrary to Defendants' assertion, however, such an allegation is not necessary. To plead a cause of action under an unjust enrichment/ *quantum meruit* theory, a plaintiff need only allege that: 1) valuable services were rendered; 2) the services were rendered to the person sought to be charged; 3) the services were accepted by the person sought to be charged, used and enjoyed by him or her; and 4) the services were rendered under such circumstances that reasonably notified the person sought to be charged that the plaintiff, in performing such services, expected to be paid by him or her. *See* Sandler & Archibald, PLEADING CAUSES OF ACTION IN MARYLAND (4th ed. 2008), § 2.36, *citing Waco Scaffold & Shoring Co. v. 425 Eye Street Assocs.,* 355 A.2d 780 (D.C. 1976); *In re Rich*, 337 A.2d 764 (D.C. 1975); *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 471 A.2d 1121 (1984); *Vereen v. Clayborne*, 623 A.2d 1190 (D.C. App. 1993); *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000); *Fischer v. Estate of Flax*, 816 A.2d 1, 10-11 (D.C. App. 2003).

Defendants do not contest that these elements have been adequately alleged. (FAC ¶¶ 102-11). Instead, Defendant argues that in a wage dispute unjust enrichment/ *quantum meruit* is limited to claims for wrongful termination. No case, including the cases cited by Defendants, have held this. As set forth in the cases cited above, unjust enrichment/*quantum meruit* is a remedy available in any situation where, in the

absence of an express contract, a person is not paid for work performed. "This remedy is based on the theory of unjust enrichment and is an alternative to the typical remedy for damages on the contract." *See* Sandler & Archibald, PLEADING CAUSES OF ACTION IN MARYLAND (4th ed. 2008), § 2.36 p. 114.

Although a plaintiff cannot recover under both a contract and quasi-contract theory concerning the same subject matter, a plaintiff is allowed to plead am unjust enrichment/*quantum meruit* theory in the alternative when there is a potential dispute as to the existence of a contract providing payment for work performed. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (explaining that contract and quasi-contract theories of recovery may be pled in the alternative). *See also* Fed. R. Civ. Proc. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' partial motion to dismiss.

Dated: June 1, 2012          <u>/s/ E. David Hoskins</u>
                             E. David Hoskins, Bar No. 06705
                             THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                             Quadrangle Building at Cross Keys
                             2 Hamill Road, Ste. 362
                             Baltimore, Maryland 21210
                             (410) 662-6500 (Tel.)
                             (410) 662-7800 (Fax)
                             dhoskins@hoskinslaw.com

/s/ *Gary F. Lynch*
Gary F. Lynch, Bar No. 29779
CARLSON LYNCH LLP
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
(724) 656-1555
glynch@carlsonlynch.com


/s/ *Gerald D. Wells*
Gerald D. Wells, III
*Admitted Pro Hac Vice*
FARUQI & FARUQI, LLP
101 Greenwood Avenue, Ste. 600
Jenkintown, Pennsylvania 19046

## **CERTIFICATE OF SERVICE**

This is to certify that I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system which will send notification and a copy

of such filing to all counsel of record.

This 1st day of June, 2012.          /s/ *E. David Hoskins*
                                      E. David Hoskins