IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Sandra T. Quickley | * | |
| | * | |
| v. | * | Civil No. CCB-12-321 |
| | * | |
| University of Maryland Medical System | * | |
| Corporation and Maryland General Hospital, | * | |
| Inc. | * | |
| | * | |
| | * | |
| | * | |

******

MEMORANDUM

Plaintiff, Sandra T. Quickley, filed suit on behalf of herself and others, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 et seq., and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 et seq., and asserting a claim for unjust enrichment under Maryland common law.  The putative class includes all persons employed at Maryland General Hospital ("MGH") within the three years prior to filing this action whose pay was subject to an automatic 30-minute meal period deduction.  Defendants, University of Maryland Medical System Corporation ("UMMS") and MGH, filed a partial motion to dismiss all claims against UMMS, the class action allegations, and the unjust enrichment claim.  The issues have been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6.  For the following reasons, defendants' motion will be denied.

**Background**

Plaintiff, Sandra T. Quickley ("Quickley"), worked at Maryland General Hospital ("MGH") as a licensed practical nurse ("LPN") in the Medical Surgical Unit from January 20, 1992 until June 14, 2011.  (Am. Compl. ¶¶ 10 & 27, ECF No. 20.)  Quickley alleges MGH

1

enforces a uniform policy whereby employees are subject to an automatic 30-minute deduction in their daily time records for a scheduled meal break, whether or not they receive the break.  (*Id.* ¶¶ 4–5.)  This policy applies to secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse technicians, trainers, and transcriptionists employed at MGH.  (*Id.* ¶ 23.)  Nonexempt employees subject to the automatic deduction policy in the three years prior to the filing of this action are the putative class members.  (*Id.*)  According to Quickley, she and the putative class members are often required to work through all or part of their meal break but are not paid for the compensable work they perform during that time.  (*Id.* ¶¶ 4–5.)  As a result, Quickley and the class members are regularly undercompensated, in violation of state and federal law.  (*Id.* ¶ 5.)

Quickley's pay statements reference "Maryland General Hospital University of Maryland Medical System."  (*Id.* ¶ 10.)  The University of Maryland Medical System Corporation ("UMMS") is a multi-hospital system, including, among others, MGH.  (*Id.* ¶¶ 12 & 14.)  Quickley asserts that UMMS and MGH are related organizations that share common membership, common ownership, governing bodies, trustees and/or officers, and benefit plans, all of which Quickley contends is dictated, controlled, and ratified by UMMS.  (*Id.* ¶¶ 17–18, 20.)  MGH employee numbers are integrated into the central UMMS payroll system, and MGH employee nametags bear the UMMS logo.  (*Id.* ¶ 19.)

During Quickley's employment at MGH, the system used to track employee time changed. (*Id*. ¶¶ 19, 29–30.) Originally, MGH employees signed in and out on sign-in sheets at the beginning and end of each day. (*Id*. ¶ 29.) Employees were not required to sign out for meal breaks. (*Id*.) For the last several years, MGH employees have used a Kronos time system whereby they swipe their identification badges at the beginning and end of each day. (*Id*. ¶ 30.) Quickley's normal work hours were 7:00 AM to 7:30 PM three days a week. (*Id*. ¶ 31.) Employees starting at 7:00 AM were not allowed to clock in before 6:53 AM and could not clock out before 7:23 PM. (*Id*.) Within that window, Quickley was given two compensated 15-minute breaks and an uncompensated 30-minute meal break. (*Id*.) She did not clock out for any of these breaks. (*Id*.) Quickley was therefore paid for 12 hours of the 12.5-hour shift on the assumption that she was taking a 30-minute meal break. (*Id*. ¶ 32.)

Quickley avers she and her coworkers rarely took the full 30-minute meal break. (*Id*. ¶ 33.) Instead, they picked up food from the cafeteria and brought it back to the unit to eat while continuing to provide nursing services. (*Id*.) The 15-minute breaks, for which Quickley and her coworkers were compensated, were generally also spent in the unit. (*Id*.) Quickley contends that her supervisors regularly observed her and her coworkers working through their meal breaks and made no effort to ensure that she and the putative class members received a full, uninterrupted 30-minute break. (*Id*. ¶ 34.)

When Quickley and other nurses worked beyond 7:30 PM, which was common, they were required to complete a Kronos adjustment sheet explaining their extended hours. (*Id*. ¶ 35.) Quickley was not expected to include the unused meal break time in the adjustment sheet, and she was unaware of any other method for recording or reporting the time worked during meal breaks. (*Id*. ¶¶ 36–37.) As a result, MGH did not accurately track the actual hours Quickley and

3

the putative class members worked. (*Id.* ¶ 37.) Quickley contends that the Kronos system could have been modified to accommodate tracking of these additional hours because, for example, Kronos had a button the employee could push to track participation in continuing professional education classes. (*Id.* ¶ 38.) Kronos was never modified to create a button to cancel the automatic meal break deduction in whole or in part for those occasions on which employees worked through the break, nor was there any instruction as to how to track that extra work time. (*Id.* ¶¶ 38–39.) Quickley alleges that, in addition to witnessing missed meal breaks first-hand, defendants were aware, given the demands of the healthcare industry and the hospital staffing shortages, that Quickley and her coworkers were often having to work through their unpaid breaks. (*Id.* ¶ 41.)

Quickley argues that defendants bear the burden of ensuring that meal breaks are not improperly deducted from pay. Instead, she asserts, defendants expect employees to work through their unpaid breaks, witness them performing compensable labor during unpaid time, including after 7:30 PM, and fail to include that time in calculating pay. (*Id.* ¶¶ 44, 51–54.) As a result, Quickley and the putative class members regularly work in excess of 40 hours per week and do not receive statutory overtime wages. (*Id.* ¶ 55.)

Quickley filed suit on behalf of herself and others, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 et seq., and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 et seq., and asserting a

claim for quantum meruit under Maryland common law.[1]  Quickley seeks a permanent injunction against defendants' engaging in any employment policy that violates the MWHL; compensatory damages, including backpay and reimbursement for lost wages in an amount to be shown at trial; and attorneys' fees and costs.  (*Id.* Prayer for Relief ¶¶ C & E.)  Now pending before the court is defendants' partial motion to dismiss all claims against UMMS, the class action allegations, and the unjust enrichment claim.  (ECF No. 22.)

### Standard of Review

Defendants move to dismiss part of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)).  To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 128 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  When ruling on a 12(b)(6) motion, the court assumes the facts alleged in the complaint are true and draws all reasonable factual inferences in favor of the nonmoving party.  *Edwards*, 178 F.3d at 244; *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombley*, 550 U.S. at 555, 127 S. Ct. at 1965.

---

[1] The quantum meruit, or unjust enrichment, claim is an alternative to the MWPCL claim for failure to compensate for non-overtime hours and not for overtime compensation required by FLSA or state law.  (Am. Compl. ¶ 102.)

Analysis

**I.      Joint Employer Status**

Defendants seek to dismiss UMMS as a defendant on the grounds that Quickley's allegations fail to show that UMMS shared joint employer status with MGH.  The FLSA defines "employer" broadly: "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Indeed, the Supreme Court described the FLSA's definition of employer as "expansive."  *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 431 (1973); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011).  The MWHL also defines "employer" broadly to include "a person who acts directly or indirectly in the interest of another employer with an employee."  *See* Md. Code Ann., Lab. & Empl. § 3-401(b).  The MWPCL defines employer as "any person who employs an individual in the State or a successor of the person."  Md. Code Ann., Lab. & Empl. § 3-501(b).

Defendants cite *Sampson v. MediSys Health Network, Inc.* and other similar cases to suggest that Quickley has not satisfied her burden in demonstrating a joint employer relationship between UMMS and MGH.  (*See* Defs.' Mot. Cons. Add'l Authority, ECF No. 25-2) (citing *Sampson v. MediSys Health Network, Inc.*, No. 10-1342, 2012 U.S. Dist. LEXIS 103052 (E.D.N.Y. July 24, 2012)).  In *Sampson*, the plaintiffs alleged that MediSys, the UMMS equivalent, "maintain[ed] system-wide policies and certain employee benefit plans," had centralized management, human resources, and payroll, and published a single newsletter for all of its related healthcare institutions.  *Sampson*, 2012 U.S. Dist. LEXIS 103052, at *11–12.  On the basis of those facts, the Eastern District of New York dismissed MediSys as a defendant, finding that the plaintiffs had not alleged "any direct role in controlling the plaintiffs' conditions of employment or in determining their rate or method of payment."  *Id.* at *12.

The facts Quickley alleges are more specific. In her initial complaint, Quickley merely provided a list of several hospitals allegedly associated with UMMS, all of which were identified as her collective employer. (*See* Compl. ¶¶ 10, 14, 20, ECF No. 1.) Having amended her complaint, however, Quickley now alleges that she worked at MGH as an LPN in the Medical Surgical Unit from January 20, 1992 until June 14, 2011, and received paychecks bearing UMMS's name. (Am. Compl. ¶¶ 10 & 27.) In addition, Quickley notes that, at some point during her employment, MGH employees were issued new employee identification numbers so that they could be integrated into the central UMMS payroll system, and that MGH employee nametags contain the UMMS logo. (*Id.* ¶ 19.) Given the "expansiveness" of the FLSA's definition of employer, these facts are sufficient, at the motion to dismiss stage, to allege joint employer status between UMMS and MGH. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003) ("[T]he broad language of the FLSA . . . demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA.") Unlike the plaintiffs in *Sampson*, Quickley provides more specific details linking UMMS to payroll and other employee tracking mechanisms. Moreover, the FLSA definition of employer includes anyone "acting directly *or indirectly* in the interests of an employer in relation to any employee," 29 U.S.C. § 203(d) (emphasis added), and these facts suggest at least an indirect interaction between UMMS and MGH employees.[2]

Given the expansive definition of employer, Quickley has alleged sufficient detail in the amended complaint to survive defendants' motion to dismiss as to UMMS.

---

[2] The *Sampson* court noted that plaintiffs failed to allege facts indicating MediSys had any "direct" control over conditions of employment or determining rate/method of payment, but the FLSA definition of employer specifically uses the words "direct or indirect control." 29 U.S.C. § 203(d).

## II.     Fair Labor Standards Act

The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). In addition, FLSA regulations require that employers keep and maintain accurate records of all hours worked for each employee. *See* 29 C.F.R. § 516.2. The regulations, however, do not dictate the method or means of recording hours worked, so long as they are accurate. *See id.* Defendants contend that a growing body of case law has held that automatic meal deductions do not violate the FLSA. (Mot. Dismiss. at 15–16, ECF No. 22-1.) What courts have held, rather, is that automatic mealtime deduction is not a *per se* FLSA violation. *See, e.g.*, *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, at *4 n.2 (W.D. Pa. Dec. 20, 2011) (citing cases); *Frye v. Baptist Mem. Hosp.*, No. CIV. 07-2708, 2010 WL 3862591, at *5 (Sept. 27, 2010) ("[S]tanding alone, an employer policy providing automatic deductions for meal breaks does not violate the FLSA."). Quickley's allegations of undercompensation, however, are sufficient to state a claim under the FLSA and parallel state law.

The Department of Labor ("DOL") Opinion and Fact Sheet cited by defendants explains that automatic deductions are appropriate only if "the employer accurately records actual hours worked, including any work performed during the lunch period." DOL Wage & Hour Op. Ltr., No. FLSA 2007-1NA (May 14, 2007), 2007 WL 5130264 ("DOL Op. Letter"); Wage & Hour Div., U.S. Dep't of Labor, Fact Sheet #53, The Health Care Industry and Hours Worked (July 2009) ("DOL Fact Sheet"), *available at* http://www.dol.gov/whd/regs/compliance/whdfs53.pdf. The DOL emphasizes that mealtime is time during which an employee is "completely relieved" and that employers "must always . . . compensate employees for work time." DOL Op. Letter at

2. Moreover, "hours worked" is defined as "all time an employee must be on duty, on the employer premises, or at any other prescribed place of work . . . [and] any additional time the employee is 'suffered or permitted' to work." DOL Fact Sheet at 1.

The burden is on the employer to ensure the employees are receiving the full meal break and are not working, either actively or inactively, during that time. *Id.* at 3 (citing 29 C.F.R. § 785.19(a) and noting that the employer must pay if the employee's meal break is "interrupted to the extent that the meal period is predominantly for the benefit of the employer"); *see* 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."); *Roy v. Cnty. of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998) (stating that the burden rests with the employer to demonstrate entitlement to mealtime payment exemptions under the FLSA); *Johnson v. City of Columbia*, 949 F.2d 127, 129–30 (4th Cir. 1991) (same); *Abendschein v. Montgomery Cnty.*, 984 F. Supp. 356, 359 (D. Md. 1997) (same).

When the employer's automatic deduction policy shifts the burden to employees to report time worked during meal breaks, the policy must be made clear to employees, and the employer must make every effort to facilitate reporting opportunities. *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 623–24 (N.D. Tex. 2008). While defendants contend that employees must accurately report their hours, there is no evidence that MGH provided a means by which the employees could opt out of the automatic mealtime deduction. Rather, Quickley's allegations indicate the Kronos timekeeping system provided opt-out buttons for professional education and training courses, (Am. Compl. ¶ 38), but not for missed meal breaks. Similarly, employees could

fill out a Kronos adjustment sheet when working past the 7:30 PM clock-out time, but they were not provided a Kronos adjustment sheet to report missed lunch breaks or portions thereof. (*Id.* ¶ 36.) If defendants' timekeeping policies do not provide a means by which employees can accurately report time, defendants cannot simply abdicate responsibility for adequate compensation by shifting the burden to employees. Quickley has alleged sufficient facts to make out a FLSA claim.

### III. Maryland Wage and Hour Law

The MWHL is the "state parallel" to the FLSA, and the requirements for pleading a claim under the MWHL "mirror those of the federal law." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (citing *Turner v. Human Genome Scis., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003)). As such, a plaintiff successfully pleads her claim under the MWHL by adequately pleading her FLSA claim. *Id.* Because Quickley has sufficiently alleged an FLSA violation, her MWHL claim will also survive defendants' motion to dismiss.

### IV. Maryland Wage Payment and Collection Law (MWPCL)

The MWPCL "requires employers to establish regular pay periods" and "prohibits employers from making unauthorized deductions." *Friolo v. Frankel*, 819 A.2d 354, 362, 373 Md. 501, 513–14 (2003) (citing Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3 Subtitle 5). An MWPCL claim cannot be sustained if the plaintiff fails to allege that the defendant was involved in payment of her wages. *Jennings*, 2011 WL 2470483, at *5 (citing *Deras v. Verizon Maryland, Inc.*, No. DKC 09-0791, 2010 WL 3038812, at *8 (D. Md. July 30, 2010)).[3] Just as Quickley has alleged sufficient facts to suggest UMMS may be a joint employer for purposes of the FLSA and MWHL claims, she has alleged enough to survive the motion to dismiss as to UMMS on the MWPCL claim as well.

---

[3] Unpublished opinions are cited not as precedent but for the persuasiveness of their reasoning.

**V.     Quantum Meruit**

In Maryland, a claim for quantum meruit, or unjust enrichment, has three elements. *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 294–95, 936 A.2d 343, 352 (2007).  The plaintiff must show: (1) a benefit conferred upon the defendant by the plaintiff; (2) the defendant appreciated or knew about the benefit; and (3) the defendant accepted the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.[4]  *Id.* at 295, 936 A.2d at 352.  An unjust enrichment claim is based in equity, and the right to restitution is subject to counter-equities that the defendants, as recipients of the benefit, may assert.  *Id.* at 297, 936 A.2d at 352.  A successful unjust enrichment plaintiff must show that the defendant received "benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses."  *Id.* at 295–96, 936 A.2d at 352 (citing *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659, 886 A.2d 900, 921 (2005)).

Assuming Quickley's allegations are true, she and similarly situated plaintiffs regularly work during the 30-minute period automatically deducted for a meal break.  Defendants, allegedly aware of their employees' busy work schedule, do not provide a means by which employees can object to the automatic deduction when they perform compensable work during what would otherwise be their meal break.  Accordingly, Quickley has alleged facts sufficient to survive defendants' motion to dismiss on the issue of unjust enrichment.

---

[4] Defendants contend Quickley's quantum meruit claim must be dismissed because she failed to allege wrongful termination.  Wrongful termination is not required to recover under an unjust enrichment theory.

Defendants contend, however, that the FLSA preempts any claim for unjust enrichment. The Fourth Circuit has held that the FLSA preempts claims seeking state law remedies based on proof of FLSA violations. *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194–95 (4th Cir. 2007). In *Anderson v. Sara Lee Corporation*, the class members relied on the FLSA as the source of rights for which they sought to recover damages under state law. *Anderson* held that the FLSA provided the exclusive remedies for FLSA violations, thereby preempting any available state law damages. *Id.* at 194. In *Bouthner v. Cleveland Construction Inc.*, a judge in this district applied that rule to a quantum meruit claim that did not reference the FLSA but sought minimum wage and overtime payment controlled by the FLSA. *Bouthner v. Cleveland Constr. Inc.*, No. RDB-11-244, 2011 WL 2976868, at *7 (D. Md. July 21, 2011).

The FLSA's savings clause allows states and municipalities to enact wage and hour legislation that is more favorable than the FLSA's protections, 29 U.S.C. § 218(a), but the federal statute nonetheless preempts common law claims for rights protected by the FLSA. *Bouthner*, 2011 WL 2976868, at *7 (citing *Helm v. Alderwoods Grp.*, 696 F. Supp. 2d 1057, 1076 (N.D. Cal. 2009)). The savings clause indicates, however, that Congress did not intend the FLSA to preempt the entire field of employment protections, *Helm*, 696 F. Supp. 2d at 1075, thereby leaving room for common law claims based on rights not covered by the FLSA.

Quickley's quantum meruit claim is asserted as an alternative to the MWPCL claim with regard to non-overtime unpaid wages for all hours worked, rather than for minimum wage or overtime. Given that Quickley alleges her normal schedule consisted of three 12-hour shifts, it is plausible there were weeks she and similarly situated plaintiffs worked fewer than 40 hours and were therefore not eligible for overtime but were not compensated for all hours worked. Quickley's claim is therefore distinguishable from that asserted in *Bouthner*, where the plaintiffs

sought minimum wage and overtime payment, both of which the FLSA covers. Because Quickley's quantum meruit claim is not entirely based on protections covered by the FLSA, it is not to that extent preempted. Defendants' motion to dismiss the quantum meruit claim will therefore be denied, but the claim will be limited.

### VI.    Putative Class Members

Quickley brings these claims on behalf of herself and a potential class including all nonexempt individuals working at MGH in the three years prior to the filing of this action who were subject to the automatic mealtime deduction policy. (Am. Compl. ¶¶ 4 & 23.) Defendants seek to strike all class allegations.

A Rule 23 class action may be maintained if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To proceed with a FLSA class action, the plaintiff must show that there are similarly situated persons entitled to relief. 29 U.S.C. § 216(b). While neither the FLSA nor its accompanying regulations define the term "similarly situated," this district has held that when members of a potential group of FLSA plaintiffs have shown themselves to be victims of a common policy, scheme, or plan that violated the law, these members are deemed to be similarly situated. *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 (D. Md. 2008). Prior to granting conditional class certification, the burden is on the plaintiff to make this preliminary factual showing by affidavits or other means. *Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008); *Quinteros*, 532 F. Supp. 2d at 771.

The automatic meal break deduction policy allegedly applies to MGH secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses'

13

aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse technicians, trainers, and transcriptionists. (Am. Compl. ¶ 23.) Aside from asserting that the policy applies to all of these groups, Quickley provides no factual basis for concluding that all of these different types of employees were similarly situated. While Quickley contends that the automatic deduction policy applies across all 28 of these groups, it remains to be seen whether putative plaintiffs whose job function, hours, and daily tasks differ so greatly are sufficiently "similarly situated."

To proceed with class certification, Quickley will need to "make a preliminary factual showing, through the use of means such as affidavits, that a similarly situated group of potential plaintiffs exists." *Quinteros*, 532 F. Supp. 2d at 771. The putative class members need not have identical factual circumstances, but their positions must be similar. The inquiry at the conditional class certification stage is less stringent than the ultimate determination of whether the class is properly constituted, *see D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995), but mere allegations in the complaint will not suffice. Class certification is not, however, before the court at this time. Without implying any opinion as to whether the litigation should proceed as a class action, dismissing the class allegations at this point would be premature. Defendants' motion to dismiss all class allegations is denied pending further discovery as to similarities among putative plaintiffs.

## Conclusion

For the foregoing reasons, defendants' partial motion to dismiss will be denied.  A separate order follows.

| | |
|---|---|
|    September 13, 2012 |          /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |